## ALDRIDGE v. JOHNSON et al.

No. 18058. Opinion Filed Sept. 18, 1928.

(Syllabus.)

**Mines and Minerals—Assignee of Lessee of Mining Property Held not Agent of Lessor in Engaging Work and Material for Improvements so as to Authorize Lien on Real Estate.**

Where the owner leases real estate for mining purposes under a contract in writing containing a provision that lessee shall have the free use of certain mining machinery thereon, lessee to put said machinery in usable repair at his own expense, and in the event lessee shall install machinery of any kind for use, such additional machinery to remain the personal property of lessee, but all repairs of buildings or to mill on the land to become property of lessor at the termination of lease, one who furnishes labor and material to a second assignee of the original lessee's interest in said lease, in making improvements, is not, by virtue of section 7461, C. O. S. 1921, as amended by S. L. 1923, c. 54, entitled to a lien on so much of the estate and property as remains in the owner upon the sole theory that the above provision in the lease constituted the lessee and his assigns the agents of lessor for the purpose of making said improvements, and where the sufficiency of

a petition setting forth the above facts is challenged by demurrer, it is not error for the court to sustain same.

Commissioners' Opinion, Division No. 1.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by Charles Aldridge against Irwin B. Johnson et al. Demurrer to the petition sustained, and plaintiff appeals. Affirmed.

Owen & Davis, for plaintiff in error.

George T. Webster, for defendants in error.

BENNETT, C. This was a civil action brought by Charles Aldridge against Irwin B. Johnson, D. B. Niven, C. S. Byrd, and E. C. Dunmeyer, in district court of Ottawa county, Okla. Plaintiff sought a personal judgment against Irwin B. Johnson, and to have same declared a lien upon the lands of D. B. Niven. The parties will be referred to in the order in which they appeared in trial court.

Plaintiff's amended petition, in substance, alleges that plaintiff sold and delivered to Irwin B. Johnson certain building material and performed certain labor for him in the repair of a mining mill owned by, and situated on, certain lands of D. B. Niven in Ottawa county, Okla.; that on November 13, 1924, D. B. Niven executed and delivered a contract in writing, whereby the defendant last named contracted to execute and deliver to said E. C. Dunmeyer, his heirs and assigns, a lead and zinc, etc., mining lease, in the usual form covering said lands; which lease contained the following paragraph:

"It is further covenanted and agreed that the party of the second part (E. C. Dunmeyer), his heirs and assigns, shall have the free use of the mill and machinery, engine drum and shafting now owned by the party of the first part (Niven) for the drilling of such ore as is mined off of the land so leased, and the party of the second part shall place such mill and machinery in usable repair at his own expense, and in the event the party of the second part shall install machinery of any kind for use in said mill, such additional machinery shall be considered personal property of the party of the second part, but all repair of buildings on said land, or on the mill, shall be considered as fixtures and become the property of the first party."

That on November 13, 1924, defendant E. C. Dunmeyer sold, assigned and transferred unto defendant C. S. Byrd the contract above described; that on March 9, 1925, defendants Dunmeyer and Byrd sold, assigned, and transferred to defendant Irwin B. Johnson the contract for lease above described, and

also the lease called for in said contract between Niven and Dunmeyer; that defendant Niven, on April 10, 1925, executed and delivered to defendant Dunmeyer his mining lease upon the real estate above described, all as per contract.

Copies of the above-described contract, assignments, and lease are attached to and made part of the petition. Plaintiff alleged that defendant Johnson, being unable to comply with his contract with defendants Dunmeyer and Byrd, surrendered to them his contract of purchase on August 19, 1925, and delivered possession of said real estate, lease, mill and premises to defendants Dunmeyer and Byrd.

It is also alleged that, during the time that said Irwin B. Johnson was in possession of said property, he purchased from plaintiff certain lumber, materials and supplies, and, also, that plaintiff furnished certain labor, all of which, amounting to $2,784.28, went into repair and improvement of the mill, lease and mining property aforesaid; that said lumber, materials and labor were supplied unto said Johnson under a contract between plaintiff and said Johnson between the 7th day of May and the 9th day of June, 1925.

Plaintiff alleges that he caused to be filed on July 7, 1925, in office of clerk of district court of Ottawa county, Okla., his duly verified lien statement according to law, a copy of which is attached to the petition. It is also alleged that the mill was not in usable repair at the time the supplies were furnished, and that such material and supplies were necessary for the operation thereof. Wherefore, plaintiff prays judgment against defendant Johnson for $2,784.28, with interest thereon and attorney's fee, and that said judgment be declared a special lien upon the said real estate belonging to defendant Niven.

D. B. Niven, the owner of the real estate above mentioned, and C. S. Byrd, demurred to plaintiff's amended petition, for that it failed to state a cause of action in favor of plaintiff and against said defendants, which demurrer was sustained. Thereupon, plaintiff refused to plead further, and elected to stand upon his amended petition. Judgment was accordingly rendered against plaintiff and in favor of defendants, and plaintiff brings the case here for review.

Our only inquiry here on this appeal is: Was the action of trial court in sustaining the demurrer to plaintiff's petition error?

The plaintiff quotes but one theory, and makes, relies upon, and briefs but one point,

which is set out in his brief in the following words:

"The contract for mining lease from Niven, the landowner, to Dunmeyer and his assigns upon the real estate described in the petition, required Dunmeyer and his assigns to place said mill and machinery in a usable condition', thereby constituting Johnson assignee of Dunmeyer, the agent of Niven for the purpose of placing said mill and machinery in a usable condition by having the same repaired."

We shall confine ourselves to the theory and single contention so made. Plaintiff, in support of his contention, cites in his brief, among others, a number of cases from Missouri and from Kansas, an Indiana case, and one or two federal cases, but the lien statutes upon which these cases are predicated are not set out. The lien statutes of the different states are so varied as to make decided cases of doubtful value without a study of the statutes. The Oklahoma lien statute, section 7461, C. O. S. 1921, as amended by the act of 1923, is as follows:

"Labor and Materialman's Lien. Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement, or structure thereon, * * * shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate. * * *"

In the case of Wm. Cameron & Co. v. Beach, 44 Okla. 663, 146 Pac. 29, the court says:

"Under section 3862, Rev. Laws 1910, the right to a materialman's lien depends upon a contract with the owner of the property. The contract for the material may be made either with the owner or his duly authorized agent; but, in the absence of such contract, the lien cannot attach to the property, or be enforced against it."

In Gentry-Bowers Lumber Co. v. Hamill, 75 Okla. 210, 182 Pac. 687, the court, in the second paragraph of the syllabus, says:

"Where the owner of property makes a contract with a builder to erect a building and to furnish lumber therefor, and such contractor purchases the lumber himself, but fails to pay for same, the contractor alone is responsible; and no lien attaches to the building, or land upon which it is erected, under section 3862 or the statute, in favor of the creditor."

And paragraph 3 of the syllabus is as follows:

"A contract between the owner and a contractor for the erection of a building does not constitute the contractor agent of the owner for the purchase of material to be used in the erection of the building, so as to give a materialman's lien against the owner under section 3862, Rev. Laws 1910."

In the opinion, the court says:

"It is urged by counsel that the material was furnished with the knowledge of Hamill, and, that being true, plaintiff was entitled to its lien, relying upon cases construing the statutes of Maine and Massachusetts, which provide for a lien where the material is furnished with the knowledge and consent of the owner. Our statute gives a lien only under contract with the owner. These authorities are not in point under our statute."

In the case of Cahill-Swift Mfg. Co. v. Sayer, 72 Okla. 88, 178 Pac. 671, the court, after quoting section 3862, Rev. Laws 1910, supra, says:

"It will be noticed this statute gives the lien where the contract is made with the owner, but if the land on which the material is to be used is leased, and the title is not in the person contracting, the lien is on the improvements and leasehold estate, and not on the land; that is to say, the lien attaches only to the estate and interest owned by the person making the contract."

The court in the opinion, quoting from the case of Getto v. Friend, 46 Kan. 24, 26 Pac. 473, said:

"For material furnished for a building to one who held under executory contract of purchase, a mechanic's lien is confined to the equity of the purchaser under the executory contract."

While the plaintiff now in his argument and brief relies solely upon the agency of Johnson, who had no direct contractual relations with Niven, the owner, there is in plaintiff's petition no semblance of allegation that either Dunmeyer, Byrd or Johnson were such agents. If the allegation of such agency had been made and sustaining proof introduced, they would have been entitled to recover personally against Niven, and their petition would have reflected their contention, but they sought to recover no judgment personally against Niven, but only to subject his property to the lien. To prove the alleged agency of Johnson, plaintiff relied entirely upon the following language in the contract between Niven, the owner of the land, and Dunmeyer:

"It is further covenanted and agreed that the party of the second part, his heirs and assigns, shall have the free use of the mill and machinery, engine, drum, and shafting

now owned by the party of the first part for the drilling of such ore as is mined off of the land so leased, and the party of the second part shall place such mill and machinery in usable repair at his own expense, and in event the party of the second part shall install machinery of any kind for use in said mill, such additional machinery shall be considered personal property of the party of the second part, but all repair of buildings on said land, or on the mill, shall be considered as fixtures and become the property of the first party."

Was this a binding and enforceable contract on the part of the tenant to repair the machinery and equipment? We think not. In the first place, there is no hint of agency in this contract. Second, this was a contract giving to second party the right to explore and mine this property for minerals for a full term of ten years, and with the right, at the termination of the first period, for an extension for an additional ten years. There was nothing to compel the lessee to even use the property for the purpose for which it was leased. Third, there was no money obligation incurred between said parties incident to or arising out of the repairing or failure to repair this property, or the using or failing to use the same. The lessee had the option to use or not to use the machinery for such purpose and to such extent as he wished, or as suited his convenience, and the contract in plain terms says that the lessee was to have free use of same. That this was simply a privilege without obligation is borne out by the words of the lessee himself in his amended petition, wherein, on page 2 of the original petition, plaintiff uses these words:

"Granting to defendants Johnson and Byrd, and those under whom they claim * * * the right and privilege to * * * improve and repair said mining mill and plant located thereon and to make such addtions and improvements thereto as they might deem beneficial or necessary."

And on page 1 of the original lien statement, plaintiff uses the identical language above. It will be observed, also, that, in the lease, which was made conformable to the contract, no mention is made of improvements to be made on the machinery. It will be seen, too, that the assignees do not assume the performance of the conditions of the lease, or the conditions of the contract. They simply buy the interest of the lessee in said contract and in said lease.

Under the authorities above cited, it would seem certain that Dunmeyer was not made the agent of Niven to improve this property, even if nothing had been said as to who was to pay for such improvements;

but the contract, in plain terms, discloses that such repairs as were made should be made at the expense of the lessee. It must, therefore, follow that Dunmeyer was not a contractor with the owner, Niven, in the sense that he (Dunmeyer) would be given a lien for any work which he did, or for any material which he furnished on the property, for the reason that he owed the owner nothing, and the owner owed him and was to owe him nothing. Therefore, there was no debt which the lien should protect. For the same reasons, neither Byrd, Johnson, nor the plaintiff, could have been subcontractors, in so far as Niven, the owner, was concerned for section 7463, C. O. S. 1921, which protects subcontractors, artisans, and day - laborers in the employ of a contractor, contains a provision "that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he (the owner) contracted to pay the original contractor." Surely, if the owner contracted to pay Dunmeyer no sum for making these improvements, and became indebted to him in no amount therefor, certainly, under this section, the owner would not become bound to a subcontractor or one employed by the contractor.

A case much like the case at bar, Hudson-Houston Lumber Co. v. Parks, 91 Okla. 46, 215 Pac. 1072, holds, in the third paragraph of the syllabus:

"Where the owner leases certain lots under a lease contract containing a provision that the lessee 'is to take the premises above described and is to make all necessary repairs and alterations as is necessary to meet his convenience, and is to build the house on lot 5 back until it is the same length as the one on lot 6. And it is further understood and agreed that the party of the second part is to leave all this repair and work at the time of the termination of his tenancy'—a materialman furnishing material to the lessee to be used by him in making such improvements is not entitled to a lien on the premises of the owner under and by virtue of section 3864, Rev. Laws 1910, where the lessee fails to pay a balance due the materialman for such material, the owner not being indebted at any time to the lessee for the making of such improvement."

In that case, the evidence showed that from September 24th to November 28, 1917, defendant Parks purchased of plaintiff $4,000 worth of lumber, and the same was delivered to Parks on the lots of defendant, Dillard (the owner), and that Parks used the lumber in the erection and construction of a building on said lots, and that at said time Parks conducted on said lots a con-

fectionery, restaurant and pool hall business. There was evidence in the record that Dillard, the owner of the land, knew that plaintiff was furnishing lumber and material to go into the building that Parks was constructing, and that he made no objection to the erection or construction of the building. There is no dispute as to the fact that plaintiff complied with the subcontractor section by filing statement within 60 days, and by serving proper notice on the owner of the property. The court says, in quoting from Blythe v. Poultney, 31 Cal. 234, as follows:

"The right of a materialman to a lien on the land and building as against the owner for materials furnished the contractor, depends for its existence upon the fact of an indebtedness from the owner to the contractor, at the time, and subsequent to the notice."

Further, the court said in the opinion:

"Assuming that Parks was the original contractor, it is clear that by the terms of his lease contract with Dillard, by virtue of which he made improvements on the premises of Dillard, he had no lien of any character on Dillard's property, for. the reason that Dillard owed him nothing whatever for the making of the improvements. And for the further reason that Parks had no contract with Dillard whereby Dillard was obligated to him in any sum whatever for the improvements made by him on the land owned by Dillard. Parks enlarged a building he was already occupying, for his own convenience, agreeing to leave it on the premises at the expiration of his lease. Dillard not having contracted to pay Parks any sum whatever for making the improvements on his premises, and not being indebted in anywise to Parks, the original contractor, there was consequently no fund in Dillard's hands due and owing Parks.

"In the case of Hoggson Bros. v. Dickason-Goodman Lbr. Co., 81 Okla. 31, 196 Pac. 686. it is held in the second paragraph of the syllabus:

" 'Where a contract is made for the erection of a building, the contract price for the erection thereof constitutes a fund from which the subcontractor and those furnishing material to, or performing labor for, them are to be paid for such material and labor, and it is the duty of the owner and principal contractor to see that such fund is properly distributed to the persons entitled thereto.' "

In the case at bar, there was no indebtedness from the owner to the lessee, and, therefore, there could have been no ·fund out of which to pay any subsequent lien or any subcontractor.

The same doctrine is announced also in the case of Antrim Lumber Co. v. ·Mendlik,

110 Okla. 76, 236 Pac. 422. One Pauline Shara Mendlik was owner of a theatre building in Lawton, and leased same to Welch, authorizing him to make repairs and alterations on said theatre building. Antrim Lumber Company furnished the material and filed its lien statement to secure a lien upon Mendlik's property. After the evidence showing the facts above, and, in addition, that the lease contained a provision that the leased premises at the end of the lease period were to be turned over to the owner in as good condition as they originally were, that lessee should replace and ·repair at his own expense the leased premises, and that at the final termination of the lease, the lessee should have the right to remove such fixtures as were not attached to the realty, the court, upon the filing of a demurrer to the plaintiff's proof, sustained the contention of Mendlik, and held that since there was no fund and no obligation by the owner which might become the basis of the lien in favor of either the lessee or one who furnished material or labor, no lien should be allowed. This case refers with approval to the case of Hudson-Houston Lumber Co. v. Parks, supra.

Plaintiff, referring in his brief, to the two cases last cited, says that he thinks they are distinguishable from the case at bar, for as he says, "they did not require and obligate the tenant to make improvements as in the case at bar." From a reading of the third paragraph of the syllabus in the Hudson-Houston Lumber Company Case, we certainly are unable to follow plaintiff's reasoning. In that case, the contract called for such alteration and repair of the premises as might be necessary, and also that a house be built. The holding of the court is based upon the statement that no lien could be fastened upon the owner because the owner was not at any time indebted to the lessee for the making of such improvements.

We have confined ourselves to a discussion of the only theory advanced, and the sole point urged by plaintiff, that the lessee and his subsequent assignees were made, by the written contract for lease with the owner, agents of such owner, and we come to a conclusion contrary to the contention of plaintiff. If, in fact, such parties were, by the contract, made agents of the owner, then the landowner is liable. and the whole of the land and the improvements are subject to lien for the unpaid labor and material bill, for a contract is. in law, made with the owner if made by his authorized agent.

It is perhaps not necessary for us to dis-

cuss the meaning and effect of the provisions in the statute (section 7461, C. O. S. 1921), providing, "If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate" (which was not referred to by plaintiff either in argument or brief), except to say that if the owner, neither in person nor by agent, authorized the purchase of this material, or the employment of this labor, and did not obligate himself to any contractor, subcontractor, or other person therefor, that his title should not be affected. But by this we are not holding or intending to hold that such rights and interests in the property, as were held by those at whose instance the improvements and repairs were made, and also the improvements thus put thereon, in so far as the same may be sold and removed without damaging the owner's freehold, might not be the subject of lien, for such seems to be the clear meaning of the statute.

We think the conclusion herein reached is sustained in principle by the case of Okmulgee Plumbing Co. v. Comstock, 125 Okla. 245, 257 Pac. 320, which was rendered June 22, 1926.

For the reasons given, we hold that the judgment of the trial court was proper, and the judgment is affirmed.

TEEHEE, LEACH, REID, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 40 C. J. p. 91, §73; p. 103, §93.