### STATE ex rel. MOTHERSEAD, Bank Com'r, v. CONTINENTAL SUPPLY CO. et al.

No. 17486. Opinion Filed May 28, 1929.

Fred Hansen, for plaintiff in error.

C. D. Lewis, for defendant in error Continental Supply Company.

Caruthers & Irwin and H. S. Sample, for other defendants in error.

HERR, C. This is an action originally brought by the state on relation of O. B. Mothersead, Bank Commissioner, in the district court of Okmulgee county against the Continental Supply Company, a corporation, Emet Jordan, and Mattie E. Schilling to quiet title to a leasehold estate created by virtue of an oil and gas lease in and to 80 acres of land located in section 17, township 13 north of range 13 east, Okmulgee county, and to determine title to certain oil well supplies and machinery thereon located and used in developing said lease for oil and gas.

The defendants claimed liens for materials and supplies furnished and labor performed in developing said lease and asked foreclosure of their liens. The trial court rendered judgment in their favor. Plaintiff appeals.

The case was tried on an agreed statement of facts, supplemented by oral testimony. It is assigned as error by plaintiff that the court erred in not rendering judgment in its favor on said testimony and agreed statement of facts.

It appears that one L. E. Cooper was indebted to the Bank of Commerce, Okmulgee, in the sum of approximately $20,000; that to secure such indebtedness he executed to said bank a mortgage on the property in ques-

tion. The bank became insolvent and, upon taking over the assets of said bank. the Bank Commissioner brought proceedings resulting in the foreclosure of said mortgage, and a sheriff's deed conveying the property involved was executed and delivered to the Bank Commissioner on the 1st day of April, 1923.

In January. 1924, W. H. Crume, liquidating agent for said bank, and C. P. Bunte entered into an agreement whereby the said Bunte agreed to purchase said property for the sum of $10,000. A deed conveying said property was thereafter executed to said Bunte by the Bank Commissioner. Bunte, however, was financially unable to make payment. It was then agreed by the parties that a cash payment of $1,000 should be made; that $2,500 should be paid in four months thereafter and the balance of $6,500 in six months thereafter, and that the deed of assignment executed by the Bank Commissioner should be placed in escrow in the Central National Bank of Okmulgee to be delivered to Bunte by said bank upon payment of the purchase price. Time was made of the essence of this contract and if payments were not made in accordance with the terms thereof, the same was to be null and void and no title should pass to the grantee. This agreement was reduced to writing. The portions thereof material to this litigation are as follows:

"Whereas, it is the desire and intention of the parties hereto that the party of the second part shall purchase the said title to said property. as described in said deed and assignment, for the sum of $10,000; and

"Whereas, the party of the second part has this day paid to party of the first part the sum of $1,000 in cash, and has executed to party of the first part his certain promissory note of this date, for the sum of $2,500, with interest at eight per cent. from date thereof, due on or before four months after date; and his promissory note additional in the sum of $6,500, at the same rate of interest, payable on or before six months from date.

"Now, therefore, it is agreed by and between the parties that the aforesaid deed and assignment, signed and acknowledged by said acting Bank Commissioner, together with a copy of this escrow agreement shall be placed in escrow in the Central National Bank, of Okmulgee, Oklahoma; and the party of the second part is hereby given the right to enter upon said property in said deed and assignment described, for the purpose of cleaning out any of the wells on said property and of operating said property, and he is hereby given the right to drill any of said wells deeper or to drill any other wells in and upon said property with the under-standing that all of said operations are to be had at his own expense and that he will not create or allow any lien to be filed or to accrue against the said property by reason of his operations, and that he will pay for all such operations promptly when due. And when said notes, together with interest thereon, have been paid in full, the said bank shall deliver to party of the second part the deed and assignment so escrowed, as aforesaid, with his agreement, provided, however, that party of first part is able to secure the approval of the district court of Okmulgee, Oklahoma, at the time of delivery, to the deed and assignment above referred to.

"It is further agreed between the parties that the oil runs from said property up to the time of the delivery of said deed and assignment shall be paid direct to the party of the first part and shall be applied as payment on the notes of the second party, after the deduction of the pumper's salary of $75 per month, and the other incidental and ordinary expenses, not to exceed a total expenditure on the part of first party of $100 per month, including the salary of the pumper."

It appears that at the time this conditional sale contract was entered into between the parties there were two small producing oil wells on said premises. It further appears that under the terms and provisions of the contract above mentioned, Mr. Bunte, the conditional vendee thereunder, went upon the premises, cleaned out these wells and drilled them several hundred feet deeper, which resulted in considerable increase in production. For this purpose, he purchased material from defendant supply company in the sum of $3.024.81, which amount remains unpaid. He also became indebted to defendant Emet Jordan for labor and material in the sum of $6,504.50. A portion of this claim, however, was assigned by defendant Jordan to his co-defendant, Mattie E. Schilling. Defendants claim liens under and by virtue of section 7464, C. O. S. 1921.

Under the agreed statement of facts, it was agreed that defendant had no agreement or contract direct with either the liquidating agent or the Bank Commissioner for purchase of material or hire of labor for the development of this lease, but, on the contrary, it is expressly stipulated that such contracts and agreements were had and made with the conditional vendee, Bunte.

It is contended by plaintiff that, it having been established that no contract, expressed or implied, for the furnishing of material or performance of labor for the development of this lease was ever had with plaintiff, the owner of the leasehold, no lien

for such purpose can attach to its interest therein. Numerous authorities are cited to sustain this contention.

Counsel for defendants, however, contend that under the contract, when properly construed, the conditional vendee, Bunte, in developing the lease. in hiring the labor and purchasing material for this purpose, was acting for the Bank Commissioner, and that on this theory the judgment should be sustained. With this contention we are inclined to agree.

Plaintiff argues that the agency theory cannot be sustained under prior holdings of th's court in the following cases: Hudson-Houston Lbr. Co. v. Parks, 91 Okla. 46, 215 Pac. 1072; Antrim Lbr. Co. v. Mendlik, 110 Okla. 76, 236 Pac. 422; Aldridge v. Johnson, 132 Okla. 257, 270 Pac. 322. In our opinion, these cases are not controlling under the facts in the instant case. In all of these cases the tenants in possession were permitted, under written lease contracts, to make improvements for their sole use and benefit. Material was furnished under contract with the tenants. The court held the interests of the owners not subject to the lien, and also held the tenants not the agents of the owners in making the improvements.

In the instant case, the facts are materially different. Here the contracts were entered into for the primary benefit of plaintiff, the owner of the leasehold estate. Under the terms of the contract, the conditional vendee, Bunte, was authorized and permitted to enter into possession of the premises, develop, and operate the lease for the benefit of plaintiff. The contract directed the disposition of the proceeds. The entire amount raised from oil runs was to be applied on the notes held by plaintiff for the purchase price of the lease, except a small amount thereof for incidental purposes and pumper's wages, and these expenses were limited by the terms of the contract. Plaintiff, in a measure, controlled operations under the terms of the contract. It was, in fact, the real party for whom the work was done and for whose benefit the lease was operated. The indebtedness was incurred to the end that the lease might be made productive for its benefit. It was interested in collecting at least a portion of the original debt owed by L. E. Cooper to the Bank of Commerce and sought to make the lease productive in order to accomplish this purpose. The contracts made by Bunte for the development of this lease must, therefore. in law, be considered and held to be contracts of the Bank Commissioner, and subject to the liens. Parties cannot be permitted to evade the lien statute by merely making conditional sales contracts with insolvent vendees.

In the case of Pierce v. Blair, 148 N. E. 414, the Supreme Court of Indiana holds:

"Under contract by which purchasers of mine were to keep it in operation and pay owners one-half gross proceeds, and entitled to salary only until agreed price fully paid, miners have same rights to liens for wages under Burns' Ann. St. 1914, §8596, against owners as if employed directly by them, and their liens are superior to prior mortgages."

In discussing the case in the body of the opinion, at page 416, the court says:

"As applied to the operation of a mine under a contract with the owners by which the 'purchasers' were to keep the mine in operation, and pay the owners one-half the gross proceeds from sales of coal taken out, after deducting the estimated cost of digging and selling. which payments were not to be less than $30,000 per year in any event, and by which the purchasers were also to pay interest on the purchase money and keep up the mine, and could receive only salaries until the agreed price should be fully paid, subject to the forfeiture of all that might be paid toward the purchase price, and of all title to the mine in case of any default for 20 days in paying principal or interest, or performing conditions, we think the miners must be held to have been employed by express authority and direction of the owners, and to have the same rights against them as if employed directly by the owners themselves. * * * Where the owner of a mine, instead of reserving a mere royalty, has, by contract with the operator of his mine, bound the latter for a period of years to pay directly to him a large part of the gross receipts from sales of the coal taken out, and to pay for his benefit practically all the remainder in excess of an estimated cost of digging the coal, which includes a monthly salary for such operator. he will not be heard to deny that the mining was done on his behalf to the degree that whatever title he may have to the mine will be subject to a statutory lien for wages earned in taking out the coal."

In the case of Allen's Estate Ass'n v. Fred Doeke & Son, 254 S. W. 858, the Supreme Court of Missouri holds:

"Though a lessee, as such, is not an agent of the owner within Rev. St. 1919, §7216, giving mechanics' liens on buildings for work and material furnished under a contract with the owner or his agent, a lessor, by requiring his lessee to make improvements of substantial benefit to the reversion, made lessee his agent, and those furnishing labor

or material under contracts with lessee had a right to mechanics' liens against lessor's reversionary interest, even where lease expressly provided that lessee was not agent to bind lessor, and that contractors should look solely to lessee's interest in the premises."

In our opinion, the trial court was correct in holding that, under the contract and agreed statement of facts. Bunte, in developing the property, was so doing for the benefit of plaintiff, and, therefore, rightly held the leasehold, fixtures, and appliances subject to defendants' liens.

Judgment should be affirmed.

BENNETT, JEFFREY, HALL. and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Mines and Minerals," 40 C. J. §848, p. 1168, n. 49.