DEKA DEVELOPMENT CO. v. FOX et al.

No. 23416. Dec. 4, 1934.

Rehearing Denied Jan. 8, 1935.

G. C. Abernathy, Edward Howell, and Kenneth Abernathy, for plaintiff in error.

Swan C. Burnett, for defendant in error J. N. Fox.

E. C. Stanard, Leonard Carey, and Norton Stanard, for defendant in error Kiowa Lumber Company.

PER CURIAM. This action was commenced in the district court of Pottawatomie county by the defendant in error J. N. Fox, as plaintiff, and against A. J. A. Lewis, Sophia Lewis, Deka Development Company, a corporation, and another. Subsequently additional parties defendant were brought in, including the Kiowa Lumber Company.

The plaintiff alleges that on or about the 1st day of April, 1930, he entered into a written contract with the defendants A. J. A. Lewis and Sophia Lewis, by which the plaintiff was to furnish certain materials and perform certain labor for the construction of a certain building for the defendants upon a tract of ground located in Pottawatomie county, particularly described, and known as Benson Park, of which the defendant Deka Development Company was the owner, and the Lewises lessees, and that at various other times between the 1st day of April, 1930, and the 1st day of June, 1930, the plaintiff entered into a verbal contract with the defendant Lewises for the furnishing of materials and performing labor in the construction or repair of certain buildings situated upon said property, and alleges that the Deka Development Company, the owner of said property, duly consented to the erection of the buildings on said premises, and that its interest and ownership is subject to, junior, and inferior to the lien of the plaintiff. He alleges that the plaintiff filed his lien statement on June 22, 1930, and that the Lewises are indebted to him in the sum of $1,244, with interest thereon at 6 per cent. from the date of the commencement of the action and $250 attorney's fees, and prays for a foreclosure of the lien. He attaches to his petition a contract between himself and the Lewises dated April 3, 1930, and a contract between the same parties dated April 19, 1930, and a copy of his lien statement. D. L. Day and Jim Day,

two of the defendants, filed separate answers and cross-petitions, and they have been satisfied and are out of the case.

The defendant Kiowa Lumber Company filed its separate answer and cross-petition, in which it alleges that it is a corporation duly organized under the laws of Oklahoma; that on or about the 25th day of November, 1929, the defendant Deka Development Company entered into a certain lease in writing with the defendant A. J. A. Lewis, covering the Benson Park property; that it furnished to the defendant A. J. A. Lewis, certain lumber and other building material pursuant to an oral contract with the defendant A. J. A. Lewis, through his agent J. E. Varnum, which was made on or about the 20th day of May, 1930, and that all of the lumber and material furnished by the cross-petitioner was delivered on the premises and used in the construction of buildings thereon, all of which was furnished with the full knowledge and consent of the defendant Deka Development Company, and on which there is a balance due of $825.40, for which it prays judgment. There is attached to this answer and cross-petition a copy of the materialman's lien statement filed in the office of the court clerk of that county. The Prudence Thrift Company filed an answer disclaiming any right in the property except a chattel mortgage on certain personal property, which is not material to the issues involved in this appeal.

The Deka Development Company filed its answer to the petition of the plaintiff and the cross-petitions of all other defendants, in which it admits that it was the owner of the real estate described in the plaintiff's petition and known as Benson Park, and that A. J. A. Lewis was lessee of said real estate under a written contract existing between the Deka Development Company and the said A. J. A. Lewis, and attaches a copy of such contract as an exhibit. It expressly denies that A. J. A. Lewis, or any other person, was authorized by it, either orally or in writing, to purchase building materials or to employ labor, and that if such materials were sold or labor or services performed, the same were furnished and performed for A. J. A. Lewis, and not for the answering defendant, and denies that the plaintiff or any of the cross-petitioners have or are entitled to a lien on the property of the answering defendant. It files a cross-petition against the defendants A. J. A. Lewis and Sophia Lewis, in which it alleges that the defendants were to pay the cross-petitioner $700 a year in advance as rent for Benson Park on the 1st day of May in each year, and that such rent had not been paid, and prayed for judgment for a cancellation of the lease contract and for rent monthly until the date of cancellation, and alleges that the lien statements asserted by the plaintiff and all other cross-petitioners constitute a cloud upon its title to said premises, and prays that the same be canceled and removed. Appropriate replies were filed, and the defendants A. J. A. Lewis and Sophia Lewis filed an answer consisting of a general denial. There seem to have been no pleadings filed on behalf of J. E. Varnum, Davidson & Case Lumber Company, and another, defendants.

The evidence on behalf of the plaintiff showed that he did certain work in wrecking old buildings in Benson Park, and reconstructing and lengthening the swimming pool, and that he built two additional houses, all pursuant to contracts with A. J. A. Lewis and Sophia Lewis, and that he furnished certain material which he had purchased from the Taylor Lumber Company, and for which he had paid and secured a release of lien which was received in evidence. He identified and there was received in evidence the written contract between the plaintiff and the Lewises dated April 3, 1930, and one dated April 19, 1930, and the original agreement dated November 25, 1929, between the Deka Development Company and the Lewises, together with an assignment of the interest of the Lewises to the plaintiff of the latter contract and his material or mechanic's lien. He states that the original contract price to him was $1,625, and that he was to give credit for $625 on this amount when he took an assignment of the concessions from the Lewises under their contract with the Deka Development Company, and that subsequently Lewis had paid him $300, and that he was to receive $400 for a bungalow which he constructed for the private benefit of Lewis, which, nevertheless, was located on the premises known as Benson Park, and that he claimed an additional amount of $185 for paint which he had procured for Lewis, and which the plaintiff had paid for himself, and on which he admits that he had no contract. He claims a balance due him of $1,244. The plaintiff had several other witnesses who testified that they worked as laborers under the plaintiff in doing the work in and around the park premises. On cross-examination there was introduced a written contract between the plaintiff and the Lewises, dated February 25, 1930, whereby the plaintiff was to do certain work in making improvements at and in Benson Park, according to plans and specifications which

are by the terms of said contract made a part thereof, but, which, however, are not in the record in this case. This contract requires the plaintiff to furnish to the Lewises paid receipts from all persons and companies who furnished any material or labor in the construction of said improvements to the end that no materialman's or mechanic's liens will be filed upon the property upon which the improvements are made. The contract further provides that it is made under the terms of a contract between the Lewises and the Deka Development Company, dated November 25, 1929, and which was received in evidence in this case, and further provides that the lease covers the Benson Park property for a period of five years from January 1, 1930, and that said improvements and construction therein contemplated are to be made in conformity with said lease contract dated November 25. 1929, and that the plaintiff agrees that he has full notice of said lease and contract, and that in order to further protect and secure the payment of the sums due the plaintiff, the Lewises sell and assign to the plaintiff their contract or lease from the Deka Development Company, which assignment is to be void when the full payment of all sums due the said plaintiff had been made. At the conclusion of the plaintiff's testimony, the defendant Deka Development Company demurred thereto, and the court reserved a ruling thereon.

Thereafter, the Kiowa Lumber Company introduced its evidence consisting of a materialman's lien duly filed in the office of the court clerk of that county. To the lien statement there is attached an itemized statement of the material and lumber sold, all of which is charged to J. E. Varnum, and the witness C. W. Vaughn, who was the manager of the Kiowa Lumber Company, testified that he knew where Benson Park was; knew A. J. A. Lewis; that he had sold some material to be used at Benson Park during 1930; that about a week before the work started Lewis had come to the witness and wanted to buy material from the Kiowa Lumber Company, and it refused to sell him: that subsequently, J. E. Varnum came to the witness and conferred with him about buying lumber, and finally he made a deal with J. E. Varnum and charged the material direct to him on the Benson Park job. The witness told him that he wanted to handle the account in the name of J. E. Varnum and have no other name connected with it, and that he would be personally liable for it, and that the lumber was furnished under such agreement, and that subsequently

he filed a lien statement claiming a lien against the property. The two Days offered evidence supporting their lien statements.

The Deka Development Company offered the testimony of A. L. Blackwell, who testified that he was general superintendent of the Shawnee Traction Company, and that he had general supervision over the park, and that he knew generally what was going on there at the time of the construction work. Subsequently, on the trial of the case, J. E. Varnum obtained permission of the court to file a general denial verified.

The pertinent part of the contract existing between the Deka Development Company and A. J. A. Lewis and Sophia Lewis, which is dated November 25, 1929, is as follows:

"Lessor leases to lessee for the period beginning January 1, 1930, and ending December 31, 1934, that tract of land, with all the improvements thereon, known as Benson Park, located between the city of Shawnee, and the city of Tecumseh, and in consideration for the leasing of said property, with the improvements thereon, lessee agrees to operate all the amusements heretofore carried on and operated at said Benson Park, and to maintain, keep, and operate said park as an attractive and orderly place of amusement and refreshment, and lessee expressly agrees to operate the plunge and skating rink and to sell and dispense, or cause to be sold and dispensed, cold drinks of a nonintoxicating character, and other refreshments and foods, and cigars and tobacco, and to pay as rental for said Benson Park, and its use and occupation the following considerations, to wit:

"The lessee agrees to rebuild and reconstruct the plunge in such a way that said plunge will be an open air swimming place and the concrete basin thereof will be lengthened twenty (20) feet and dressing rooms will be placed on the north and south ends thereof and a new front with check room in the center thereof will be constructed on the south end of said plunge, and said lessee further agrees to open the other water wells so that all of the water wells will be in use in connection with said plunge, and the pump house will be reconstructed and a concrete reservoir with a capacity of from 50,000 to 65,000 gallons of water will be constructed for use in connection with said plunge; and said lessee does further agree to clean and improve the said Benson Park throughout, including the construction of roads and ditches in such a way that said Benson Park will be properly drained and kept in a usable condition at all times, all of which construction, erection, improvement, etc., on the part of said lessee, shall not cost less than $3,500, nor more than $3,500, payable $700 each year in advance on the 1st day of May of each

year, beginning with the 1st day of May, 1930; and in event said lessor sells said Benson Park, during the term of this lease, and the right to sell at any time is hereby expressly reserved, and lessee agrees that this lease shall, at option of lessor or its grantee, terminate when said property is sold, and if said lease be so ended, the said lessor agrees to reimburse and repay to said lessee the cost of said improvements made by said lessee under the terms of said lease as above set forth, said reimbursement and repayment to be made on a proportionate basis, in the following manner, to wit:

"In event said sale takes place after said improvements are completed and during the year 1930, then said lessee shall be reimbursed to the full extent of the cost of said improvements, and in event said sale takes place or occurs in the year 1931, the amount of the reimbursement will be 20 per cent. less than the cost of the said improvements, and said reimbursement will be reduced 20 per cent. of the cost thereof each year said sale is delayed. Provided, however, in event the purchaser agrees to and ratifies said lease and permits said lessee to continue said lease, then in that event no reimbursement as herein set forth will be due and payable to the said lessee by the said lessor. Said lessee agrees to complete the construction of the improvements named herein on or before the 1st day of May, 1930; all such improvements shall be property of lessor.

"It is further agreed that lessee shall deliver to lessor, the original receipted statements for all material used and labor performed in constructing any improvements made on said premises, and it is further agreed that lessor shall not in any event be liable to make reimbursement to lessee for any amount not shown or included in such receipted statements.

"It is further agreed that lessee shall pay any and all bills for labor or material, and shall not permit any liens for labor or material or otherwise, nor for judgments to be created or filed against the leased premises.

"It is agreed that lessee may also conduct a dance hall in the building now used for skating rink, or may conduct both amusements in said building.

"Lessee accepts the buildings and equipment in the present condition, and agrees to make any and all repairs necessary to put any of same in first class condition, and agrees that upon the expiration or sooner termination of this lease to deliver said buildings, and all of said equipment, to lessor in as good condition as they now are. Lessee agrees to keep all buildings painted, and to maintain all of said buildings in good condition. Lessee may, if he desires, enlarge the swimming pool by making it wider at his own expense, add any attractions and equipment, and concessions, and may, if he desires, remove any temporary structure, or equipment in connection with concessions or amusements in addition to such concessions or amusements as are now on said premises, but not any equipment, or structure made in replacing, repairing or improving structures or equipment now on said premises."

This constitutes all of the evidence necessary to determine the issues presented in this case. A proper construction of the contract between the Deka Development Company and the Lewises will govern the rights of the parties to this appeal.

The case was tried to the court without the intervention of a jury, and at the conclusion the court gave judgment for the plaintiff against the Lewises for $1,309.35, and in favor of Davidson & Case Lumber Company for the sum of $37.89, and decreed a personal judgment in favor of Kiowa Lumber Company against J. E. Varnum in the sum of $825.40, and decreed all the judgments to be liens of equal rank against the property known as Benson Park, as well as all improvements thereon, and adjudged the same, together with attorney's fees, to be superior to the title of the Deka Development Company.

The first contract between the plaintiff and the Lewises was sometime in February of 1930. This was a written contract dated February 25, 1930, wherein the plaintiff undertook to make, erect, build, and furnish certain improvements according to plans and specifications, and is made expressly in accordance with the terms of the written lease between the Lewises and Deka Development Company dated November 25, 1929, and the plaintiff acknowledged that he had full notice of this lease. This contract further provides that in order to secure the plaintiff for any unpaid balance due him, he was to have an assignment of the rights of the Lewises under their lease with the Deka Development Company. Subsequently, on April 3, 1930, the original contract between the plaintiff and Lewis was modified to some extent by allowing a credit of $625 for certain concessions which were transferred to the plaintiff, and further by assignment of the original contract between the Deka Development Company and the Lewises, and the contract between the plaintiff and the Lewises of April 19, 1930, had to do with a credit of $400 for a house which the plaintiff had constructed on the premises. The actions of the parties clearly indicate that the plaintiff did not contemplate a lien on any of the premises, but took an assignment of the original lease as security and took over certain concessions. Under the contract of February 25, 1930, and the assignment of the lease of November 25, 1929, the plain-

tiff was entitled to take control of the entire park and receive the entire income. This is what the plaintiff should have done and continued to pay the annual rental as therein provided to the owner of the premises, and thus had all of the primary rights of the Lewises secured to him.

Even without the expressed notice and knowledge of the existing contract or lease under which the Lewises were operating, the plaintiff, Fox, was put on notice and inquiry by the public records that the Lewises did not own the property. See 40 C. J. 95. The question herein involved has been recently decided by this court in Simpson v. Davidson & Case Lumber Co., 150 Okla. 132, 300 P. 631, wherein the court says:

"While the contract authorizes the tenant to make the improvements and provides that at the termination of the lease the improvements attached shall become the property of plaintiff (the owner), this in itself is insufficient to establish agency between the parties. In the case of Hudson-Houston Lumber Co. v. Parks, 91 Okla. 46, 215 P. 1072, this court announced the following rule:

" 'Where the owner leases certain lots under a lease contract containing a provision that the lessee "is to take the premises above described and is to make all necessary repairs and alterations as is necessary to meet his convenience, and is to build the house on lot 5 back until it is the same length as the one on lot 6, and it is further understood and agreed that the party of the second part is to leave all this repair and work at the time of the termination of his tenancy," a materialman furnishing material to the lessee to be used by him in making such improvements is not entitled to a lien on the premises of the owner under and by virtue of section 3864, Rev. Laws 1910, where the lessee fails to pay a balance due the materialman for such material, the owner not being indebted at any time to the lessee for the making of such improvements.'

"To the same effect are the following cases: Antrim Lumber Co. v. Mendl'k, 110 Okla. 76, 226 P. 422; Aldridge v. Johnson, 132 Okla. 257, 270 P. 322; Cahill-Swift Mfg. Co. v. Sayer, 72 Okla. 88, 178 P. 671; Stewart Lbr. Co. v. Derry, 122 Okla. 208, 253 P. 485. In all of these cases it is held that a lease contract authorizing the tenant to make improvements for his use, benefit, and convenience does not create an agency between landlord and tenant so as to render the interest of the owner liable to materialmen's liens where the contract for purchasing material was made with the tenant even though the contract provides that the improvements shall revert to the owner upon termination of the lease.

"The rule, of course, is otherwise where under the contract the owner is obligated to reimburse the tenant for the cost of the improvements, or where made for the primary benefit of the owner. State ex rel. Mothersead v. Continental Supply Co., 157 Okla. 24, 278 P. 269; Mansfield Lbr. Co. v. First State Bank of Vian, 147 Okla. 8, 293 P. 1079."

The holding in this case has been followed more recently in Anderson v. Gibbs Lbr. Co., 157 Okla. 17, 10 P. (2d) 416; the case is distinguishable from the holding in the case of State ex rel. Mothersead v. Continental Supply Co., 137 Okla. 24, 278 P. 269, and Mansfield Lbr. Co. v. First State Bank of Vian, 147 Okla. 8, 293 P. 1079, in that the lessee in those cases was found and held to be the agent for the owner and the owner was obligated to reimburse the lessee for improvements made. There is no such obligation in the lease now under consideration. The mere fact that the lessor was given an option in the lease to acquire the possession and improvements under certain terms and conditions is not tantamount to an obligation to reimburse the lessee; an option being merely a continuing offer to sell and not binding until accepted. See Anthis v. Sandlin, 149 Okla. 126, 299 P. 458. The above statement of the rule is enunciated in Whitfield v. Frensley Bros. Lumber Co., 141 Okla. 44, 283 P. 985, and Pirtle v. Brown, 141 Okla. 227, 284 P. 898. The defendants in error rely upon the holding of the Missouri case of Allen Estate Association v. Fred Boeke & Sons, 254 S. W. 858. The holding in this case is in conflict with the authorities above cited. The plaintiff Fox testified that he purchased a great deal of material from Taylor Lumber Company and paid for the same and obtained a release and satisfaction from that company. The evidence also shows that the Lewises did a great deal of improving on the premises they were not required to do; they constructed at least two small houses which they were not required to do under their lease. It does not appear whether the materials furnished by the Kiowa Lumber Company were used in the construction of the required buildings, or whether they were used in the construction of the "permitted" buildings. We are convinced under the facts in this case that the plaintiff did not contemplate a lien upon either the improvements or interest of the owner, but undertook to protect himself by an assignment of the Lewises' lease.

While the allegations are that the improvements were made with the knowledge and consent of the owner, the evidence does not substantiate this allegation, unless it can be said that the terms of the contract

existing between the owner and lessee were sufficient to constitute the lessee the agent of the owner. We do not so construe the contract. In fact, the expressed terms thereof repudiate such interpretation in that no obligation rests on the lessor to reimburse the lessee, and the improvements were not made primarily for the benefit of the lessor. The lease further provided for a payment of an annual rental, and it is fair to assume that from the nature of the improvements and repairs which were required by the terms of the contract, the lessee would obtain their full value by the proper use of the premises in accordance with the primary purposes of the contract. Hence it was error for the court to decree the plaintiff a lien on the interest of the owner of the premises.

In so far as the judgment in favor of the Kiowa Lumber Company is concerned, wherein its claim was adjudged a lien on the property of the Deka Development Company, we think this clearly erroneous, in that the manager of the lumber company testified that he dealt entirely with J. E. Varnum, and while the trial court found that Varnum was acting as agent for the Lewises, this finding is wholly unsupported by any evidence. Mr. Vaughn, the manager of the Kiowa Lumber Company, testified with respect to the sale of this lumber and material, his testimony being as follows:

"Q. Did you have any conversation with Mr. Lewis about that lumber? A. Yes, sir. Q. Tell the court what it was. A. He came to us a week or two before the work started, the work we furnished him the material on, and he wanted to buy the same from us and we refused to sell him. So J. E. Varnum came down in a week or ten days. He came to my office and conferred with me about buying lumber out there and I finally made a deal with him and charged it to him direct on the Benson Park job. I told him I wanted to handle it in his own name and no other name connected with it and he would be personally liable for it. Q. Did you sell lumber pursuant to that conversation and deliver it to Benson Park? A. Yes, sir."

This clearly indicates that the Kiowa Lumber Company had no transaction with anyone having any authority to bind the owner or any of the buildings or improvements on the premises. There is absolutely no testimony in the record to show what interest Varnum had in purchasing material for that project, and the manager of the Kiowa Lumber Company stated he sold it to Varnum personally and to no one else, and charged it to him in that manner. The itemized statements of the accounts attached to the lien statement show all materials sold to J. E. Varnum and verify the statement of the manager, Mr. Vaughn. Under these circumstances, the Kiowa Lumber Company was not entitled to a lien on either the interest of the owner or on the improvements.

The record shows that a judgment was entered in favor of Davidson & Case Lumber Company, but it fails to disclose any pleadings on behalf of this company or any proof in support thereof, and is clearly without evidence to support the same.

For the reasons above stated, the judgment in so far as it affects the Deka Development Company is reversed, with directions to proceed in conformity with the views herein expressed.

The Supreme Court acknowledges the aid of Attorneys C. B. Holtzendorff, T. L. Martenez, and Richard L. Wheatley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Holtzendorff and approved by Mr. Martencz and Mr. Wheatley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.