## HUBBARD v. STOTTS et al.

No. 24042. Jan. 29, 1935.
Rehearing Denied March 26, 1935.

Edward P. Marshall and J. J. D. Cobb, for plaintiff in error.

L. J. Sartain and J. T. Dickerson, for defendants in error.

PER CURIAM. The defendants in error C. A. Stotts and Hattie Stotts, hereinafter designated as plaintiffs, brought this action against the plaintiff in error, C. H. Hubbard, hereinafter designated as Hubbard, and against other parties, for the cancellation of an oil and gas lease covering certain lots in Tappan Heights addition to Oklahoma City.

The evidence discloses that the lease in question was executed by the plaintiffs, as lessors, to the Shield Petroleum Company under date of April 9, 1930, and covered a primary term of two years from date, and as long thereafter as oil or gas should be produced in paying quantities. The J. H. Gwin Drilling Company acquired an interest in the lease from the Shield Petroleum Company, and thereafter became insolvent and a receiver was appointed for said company. After the Gwin Company commenced work on the well, labor and materialmen's liens were filed on behalf of various other defendants. On December 20, 1930, the United Oil & Utility Company procured from the receiver an assignment of the Gwin Company's interest in the lease, upon its agreement to pay all the unpaid claims, amounting to about $25,000. On January 31, 1931, the well having then reached a depth of about 4,200 feet, the United Oil & Utility Company made a contract with Hubbard to drill the well to completion at 6,500 feet. Hubbard drilled the well down to 5,800 feet, and on March 16, 1931, the United Oil & Utility Company having failed to meet the payments specified in the contract, and having failed to furnish necessary casing, Hubbard ceased work on the well, and later filled the hole with mud. He left his drilling equipment on the property.

On June 20, 1931, plaintiffs notified the United Oil & Utility Company and the Shield Petroleum Company that they must resume drilling operations on or before July 1, 1931, in default of which suit would be commenced to cancel the lease, and upon their failure to resume such drilling operations, such suit was actually commenced on July 7, 1931.

The United Oil & Utility Company formally disclaimed any right, title or interest in the leased premises in open court, and it was admitted that said company and the J. H. Gwin Drilling Company were both insolvent as of March 16, 1931. The United Oil & Utility Company did not pay the outstanding claims of the Gwin Company as required by the order of court approving the receiver's assignment, and on

January 9, 1932, the district court of Pottawatomie county, Okla., canceled the conditional assignment on account of such failure to pay such claims. The judgment herein complained of was rendered March 9, 1932, and the lease expired by its own terms on April 9, 1932, since it was not productive of oil or gas.

Hubbard claimed a balance of $25,604.14 to be due him under his contract, and claimed a lien against the oil and gas lease, the materials and equipment on the premises, and the uncompleted well. The judgment limited Hubbard's recovery to $20,000, with interest and attorney's fees, and established and foreclosed the liens of the various lien claimants, including Hubbard, against the oil and gas lease and the materials thereon, but denied Hubbard's claim to a lien upon the uncompleted hole, or well, after the date of the expiration of the primary term of the lease. There was no casing or equipment in the uncompleted well itself. The court further held that the liens of the Garber Tool Company and others, who had furnished labor and materials under contracts with the Shield Petroleum Company or the Gwin Company, were prior and superior to the lien of Hubbard, who claimed under a contract with the United Oil & Utility Company.

The defendant, Hubbard, complains that the trial court erred as follows:

"First, in refusing to extend Hubbard's lien to the uncompleted well after the expiration of the primary term of the lease.

"Second, in limiting Hubbard's recovery under his contract to the sum of $20,000, with interest and attorney's fees.

"Third, in decreeing the liens of the Garber Tool Company and others to be prior and superior to the lien of the defendant, Hubbard."

The evidence clearly discloses that Hubbard had no contract with the plaintiffs, and that the plaintiffs had never authorized said company to act as their agents. We therefore have squarely presented this question:

"Can a drilling contractor under a contract with a purported lessee acquire a lien upon an uncompleted well, as distinguished from the materials and equipment thereof, extending beyond the term of the lease?"

The right of Hubbard to a lien is governed by the provisions of section 7464, C. O. S. 1921, as amended (section 10978, O. S. 1931), which provides in part as follows:

"Any person * * * who shall, under con-

tract * * * with the owner of any leasehold for oil and gas purposes * * * perform labor or furnish material * * * shall have a lien upon the whole of such leasehold. * * *"

Hubbard contends that this statute gives him a lien upon the uncompleted well, or hole, and the oil or gas which may thereafter be produced therefrom, in the event it is thereafter completed as a producing well, notwithstanding the fact that the lease has expired, while plaintiff Stotts contends that the lien is limited to the interest in the lease or in the real estate owned by the parties with whom Hubbard contracted, to wit, the United Oil & Utility Company and associates.

It is elementary that the owner of the oil and gas leasehold estate would have no right, after the expiration of the lease, to the uncompleted well, or hole in the ground, nor to any oil or gas which might at any time thereafter be produced from the land covered by the lease. In fact, we do not understand that counsel for Hubbard contend otherwise.

We are of the opinion that this court heretofore defined the above-mentioned lien statute as contended for by plaintiff Stotts. In Muller v. Campbell, 97 Okla. 91, 222 P. 980, this court held:

"Any person who furnishes materials and labor in the construction of a drilling rig or derrick on the premises to a party who is given possession of said premises under and by virtue of an executory contract to have an interest assigned him in the oil and gas lease covering same from the lessee thereof, has a lien upon the equitable interest of the assignee in said contract together with the drilling rig in the construction of which material and labor were used, under section 7464, Comp. St. 1921.".

In Aldridge v. Johnson, 132 Okla. 257, 270 P. 322, the facts were that the landowner, Niven, entered into a contract with Dunmeyer affecting certain mining property, by the terms of which, under certain conditions, he agreed to execute and deliver a mining lease on the real estate. Dunmeyer sold and assigned the contract to Byrd, and thereafter Dunmeyer and Byrd assigned same, together with the lease, to Johnson. In pursuance of the contract Niven executed and delivered the lease to Dunmeyer. Johnson employed labor and purchased materials under a contract with Aldridge, such labor and materials being necessary for the operation of the property. Aldridge prayed for judg-

ment against Johnson and for a special lien upon the real estate owned by Niven, Johnson having previously failed to comply with his contract, and having surrendered his contract of purchase. In holding that such lien did not extend to the interest of the landowner, Niven, this court quoted with approval from the case of Cahill-Swift Mfg. Co. v. Sayer, 72 Okla. 88, 178 P. 671, as follows:

"It will be noticed this statute gives the lien where the contract is made with the owner, but if the land on which the material is to be used is leased, and the title is not in the person contracting, the lien is on the improvements and leasehold estate, and not on the land; and that is to say, the lien attaches only to the estate and interest owned by the person making the contract."

In Aldridge v. Johnson, supra, the court further said:

"But by this we are not holding or intending to hold that such rights and interest in the property as were held by those at whose instance the improvements and repairs were made, and also the improvements thus put thereon, in so far as the same may be sold and removed without damaging the owner's freehold, might not be the subject of lien, for such seems to be the clear meaning of the statute."

Applying the rule therein enunciated, we now hold that an uncompleted well, or hole, whether filled with mud or not, is not such an improvement as may be sold and removed from the real estate without damaging the owner's freehold, and consequently such uncompleted well, or hole, is not, in the case at bar, subject to the lien claim of Hubbard after the date of expiration of the oil and gas lease. This conclusion is supported by other decisions of this court and the courts of other jurisdictions. Antrim Lumber Co. v. Mendlik, 110 Okla. 76, 236 P. 422; Cameron Ref. Co. v. Jerman, 110 Okla. 272, 238 P. 437; Littler v. Robinson (Ind.) 77 N. E. 1145; Williams v. Vanderbilt, 145 Ill. 238, 34 N. E. 476; Meek v. Parker, 63 Ark. 367, 38 S. W. 900; Hopkins v. Hudson, 107 Ind. 191, 8 N. E. 91.

The opinion in Brown v. Neustadt, 145 Okla. 140, 292 P. 73, relied upon by plaintiff in error Hubbard, is not in conflict with the views herein expressed. In that case this court held:

"The abandonment of an oil or gas lease by the lessee, who failed to remove the drilling or operating fixtures and appliances, and the repossession of the prem-

ises by the fee owner, do not destroy the lien rights of a lien claimant on the fixtures and appliances which were located on the leasehold and used in operating for oil and gas purposes. Section 7464, C. O. S. 1921."

In that case the question involved was the right of the lien claimant to the equipment and personal property after the expiration of the lease. The court said:

"The lease itself had been abandoned and all that remained to be sold was the personal property, the equipment. That is all the purchaser thereat acquired."

We therefore resolve the first contention against the plaintiff in error Hubbard, and hold that his right to a lien is limited to the interest in the leasehold estate, and in the uncompleted well, or hole, which was owned or held by the parties with whom he contracted, and that the right to a lien on the uncompleted well expired when the lease expired.

Hubbard next contends that the trial court erred in rendering judgment for him in the sum of $20,000 and in refusing to render judgment for $25,604.14, the amount claimed by him. The drilling contract provided that Hubbard should drill the well to 6,500 feet. The drilling stopped at about 5,800 feet, and the contract was not fully executed. Hubbard contends that he should have been allowed compensation on a per footage basis for the footage actually drilled by him, but the contract does not specifically provide for the contingency herein encountered. From an examination of all of the evidence, we are unable to reach the conclusion that the trial court erred in fixing the sum of $20,000 as the amount due.

In a case of purely equitable cognizance, the findings and judgment of the trial court will not be disturbed on appeal, unless the same are clearly against the weight of the evidence. Taylor v. Green, 119 Okla. 297, 249 P. 393; Sample v. King, 126 Okla. 63, 258 P. 913; Moore v. Moore, 167 Okla. 365, 29 P. (2d) 961.

Hubbard next contends that the court erred in holding that his lien was junior and secondary to the liens of the other lien claimants, but in this we cannot agree. As we have heretofore stated, Hubbard's lien was based upon his contract with the United Oil & Utility Company and associates, and the title of said company was based upon a contract with the receiver of the Gwin Company, under the terms of which, and as a part of the purchase price,

the United Oil & Utility Company agreed to pay all outstanding claims and liens. Such liens having already accrued before Hubbard's contract was executed, and before he furnished labor or materials, and in view of all the circumstances hereinabove mentioned, we hold that the trial court committed no error in granting priority to such other liens.

There being no error in the record, the judgment is accordingly affirmed.

The Supreme Court acknowledges the aid of Attorneys Kenneth H. Lott, J. E. Thrift, and C. J. Davenport in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Kenneth H. Lott, and approved by Mr. Thrift and Mr. Davenport, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.