MILLER, Judge.
Plaintiff Elizabeth Hanks Figuero appeals the judgment which applied Texas law to find that defendant Anthony Dominick Figuero (a Texas resident holding a title certificate showing him as owner of an automobile, who falsified a statement that he had possession of the automobile) could grant a Texas “security interest” (chattel mortgage) on an automobile physically located in Louisiana, even though defendant knew he could not obtain possession of the automobile. The trial court awarded judgment to intervenor, First Security National Bank, a Texas corporation. Plaintiff contends that her lien primes the bank’s interest. We reverse.
The Figueros married on September 7, 1972 and established a Beaumont, Texas matrimonial domicile. They immediately purchased a Dodge automobile with wife’s separate cash and registered the title in husband’s name. Husband borrowed $15,000 cash from his wife’s separate estate about November 1st, and abandoned his wife on December 15, 1972. On December 22, 1972 Mrs. Figuero brought the Dodge to Lake Arthur, Louisiana, where she established her domicile. The Dodge remained in Lake Arthur continuously after December 22, 1972.
Wife obtained a judicial separation in the 31st Judicial District Court on May 11, 1973. In July 1973 (when Figuero granted the security interest on the Dodge), Fi-guero was seen in Lake Arthur. He knew the Dodge was in his wife’s possession in Louisiana. He also knew that he had wrongfully deprived his wife of $17,500.
On September 14, 1973, plaintiff wife filed this suit seeking this $17,500 and seized the Dodge under a writ of attachment to get jurisdiction over her non-resident husband. An attorney was appointed to represent the non-resident defendant, but Figuero could not be found.
On December 7, 1973, judgment was signed against Figuero awarding the wife $17,500 plus interest, but limited execution to the proceeds of the sale of the Dodge. The judgment recognized the wife’s lien and privilege resulting from the attachment “as superior to all other claims.” The Dodge was ordered sold and plaintiff was to be paid out of the proceeds of the sale by preference and priority over other creditors.
The sheriff wrote the Texas Motor Vehicle Commission (because the Dodge had Texas license plates) to get the certificate of title. The Texas Commission notified intervenor, and on January 16 (the day fixed for the sale) First Security National Bank intervened seeking recognition of its “security interest” in the Dodge, and contending that it should receive the funds received from the Sheriff’s sale. Plaintiff called off the sale.
The intervention was tried on March 4, 1974. The attorney appointed to represent *803 the absent non-resident defendant in the intervention could not locate Figuero. In-tervenor proved a $5,173.09 debt secured by the “security interest” on the Dodge, and was awarded judgment in that amount. Intervenor’s “security interest” was held to prime plaintiff’s privilege which had been recognized in the first judgment.
The intervening bank’s “security interest” was created July 25, 1973 when Fi-guero purchased a new Ford automobile from Kinsel Ford, Inc. of Beaumont, Texas. The Ford was purchased under a “Motor Vehicle Installment Contract” which granted Kinsel Ford a “security interest” in the newly purchased Ford and also in the unencumbered (to that date) Dodge. The security interest in both cars was assigned by Kinsel Ford to the intervening hank.
Many issues have been raised, but we consider only one: In order to prime a validly obtained Louisiana attachment where mortgagor fraudulently represents that he possesses the chattel, must a Texas mortgagee check the physical location and/or condition of the mortgaged chattel to determine that mortgagor has possession of the chattel and that it is located in Texas ? We find that it does.
 The general rule is that the validity and effect of a lien or privilege on a chattel are determined by the law of the state where the chattel was located at the time the lien was created. 14 C.J.S. Chattel Mortgages § 14, p. 606; 16 Am.Jur.2d, Conflicts of Law, § 34, p. 49; and Restatement, Conflicts of Law 2d, § 251. The determination of the governing law as to the validity and effect of liens and encumbrances upon personal property will be governed by the factual situations. 16 Am.Jur.2d, § 34, p. 49.
We acknowledge that Texas connections with this Dodge are significant. The Dodge was titled to Figuero, the title certificate was in his possession, and the car was licensed in Texas. Renewal license plates were purchased from Texas because the wife could not get Louisiana plates without the title certificate.
Louisiana recognizes a foreign chattel mortgage or security interest if valid and properly recorded in the state where executed and where the property is located. This foreign security interest primes innocent purchasers or encumbrances which have been acquired after the property was brought to Louisiana, provided the foreign mortgagee did not know or consent to the removal of the property. (Emphasis added.) General Motors Acceptance Corporation v. Nuss, 195 La. 209, 196 So. 323 (1940); Pecora v. James, 150 So.2d 90 (La.App. 4 Cir. 1963); Universal C. I. T. Credit Corporation v. Victor Motor Company, 33 So.2d 703 (La.App. 1 Cir. 1948); Universal C. I. T. Corporation v. Hulett, 151 So.2d 705 (La.App. 3 Cir. 1963).
There is a new dimension presented in this case. When the “security interest” was created and recorded in Texas, the mortgagor knew the Dodge was not available to him and was physically located in Louisiana. The Texas mortgagor fraudulently misrepresented facts which due diligence by the mortgagee (Kinsel Ford) would have discovered.
The trial judge applied Texas law and recognized the “security interest,” holding this to be a logical extension of Louisiana’s conflicts of law rule recognizing foreign security interests on property located in the foreign state when the property has been removed from that state without the knowledge or consent of the mortgagee.
 Relevant here is the rule that if the foreign mortgagee knew or consented to the removal, or with due diligence would have discovered the removal, Louisiana will not apply the foreign state’s law, but will apply its own. Pacific Finance Loans v. Guidry, 69 So.2d 56 (La.App. Oris.1953). Due diligence is a factual issue to be determined by the trier of facts. Pacific Finance Loans v. Guidry, supra.
*804 The trial court found Kinsel Ford exercised due diligence in concluding the Dodge was located in Texas where defendant fraudulently declared it to be. We find manifest error in that holding.
Figuero’s fraudulent practice could have been readily discovered by Kinsel Ford before they closed the sale of the Ford. We note that Kinsel Ford sold the Ford to Fi-guero under a different name. The fact that the Dodge was titled in a different name should have alerted Kinsel Ford to the fraud. If the security furnished by the Dodge was essential to the sale, Kinsel Ford should have inquired and checked to determine that Figuero actually possessed the Dodge. For all the checking Kinsel Ford made, the Dodge could have been worthless as a total wreck.
We are impressed by the fact that there is no evidence in this record by Kinsel Ford or its representatives. They have not testified that they had reason to believe Fi-guero could produce the Dodge or that the Dodge was physically located at the address stated in the documents. Intervenor has no better rights than Kinsel Ford. In-tervenor has not sought to make Kinsel Ford a party to determine its rights as against its assignor of the “security interest.”
Figuero could not deliver the car to a prospective purchaser, so he practiced a simple fraud. He purchased the new Ford on the strenth of his false statement that he had possession of the Dodge. Since Fi-guero could not present the Dodge, Kinsel Ford should not have accepted the Dodge as security. Kinsel Ford’s poor business practice helped Figuero to practice his course of fraud, and Kinsel Ford should suffer the loss resulting from their own poor business practices.
The most significant fact is that Kinsel Ford, the mortgagee, could have so readily prevented this fraud. If the security furnished by the mortgage on the Dodge was important to Kinsel Ford, they could have required Figuero to present the Dodge for inspection. It seems unlikely that Kinsel Ford would have purchased the Dodge from Figuero on the strength of the title certificate alone. Kinsel Ford worked with Figuero to the end that he purchased a new Ford on the strength of his false declaration that he had possession of the Dodge. The fact is that he not only did not possess the Dodge, but he could not obtain possession.
Kinsel Ford did not exercise due diligence to determine that it was acquiring a valid security interest on the Dodge. Therefore, Louisiana law is to be applied. Since the Texas “security interest” was not recorded pursuant to LSA-R.S. 32:710, it does not prime plaintiffs lien acquired by her attachment of the Dodge.
The trial court was of the opinion that plaintiff knew that Figuero could grant a valid mortgage on the Dodge without having physical possession. No authority is cited for the holding that a Texas domiciliary can mortgage chattels located in a foreign state, not in his possession, and which he cannot reduce to possession. We have not been cited to authority for that proposition, and do not accept that holding.
We find manifest error in the holding that intervenor’s interest (which was acquired from Kinsel Ford) primed plaintiff’s lien acquired by the September 14, 1973 writ of attachment, which was later recognized in the judgment awarding Mrs. Figuero a first lien on the attached Dodge.
The trial court judgment is reversed and set aside. It is ordered, adjudged, and decreed that plaintiff Elizabeth Hanks Fi-guero is entitled to the proceeds of the sale of the Dodge. All costs of court related to the intervention, both in the trial court and on appeal, are taxed to intervenor.
Reversed and rendered.