556 P.2d 835

**Roy BUTT and Harold Butt, d/b/a Butt Bros., Plaintiffs-Appellants,**

v.

**VERMEJO PARK CORPORATION, a Delaware Corporation, and American Fuels Corporation, a New Mexico Corporation, Defendants-Appellees.**

**No. 10613.**

Supreme Court of New Mexico.

Nov. 15, 1976.

Kastler, Erwin & Davidson, John P. Davidson, Raton, for appellants.

Hinkle, Bondurant, Cox & Eaton, Harold L. Hensley, Jr., Roswell, for appellees.

OPINION

OMAN, Chief Justice.

This appeal arises from a suit to foreclose claimed liens for work done and materials furnished pursuant to our Mechanics' and Materialmen's Lien Act (Mechan-

ics' Act) [§§ 61–2–1 to 61–2–17, N.M.S.A. 1953 (Repl. Vol. 9, pt. 1, 1974)], and our Oil and Gas Lien Act (Oil Act) [§§ 65–5–1 to 65–5–15, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, 1972)]. Plaintiffs (Butt Bros.) claimed that a lien attached to the fee estate under the Mechanics' Act and to a leasehold estate in the same lands under the Oil Act, even though by judicial decree the leasehold estate had terminated more than six months prior to the filing of the claim of liens.

We are concerned on this appeal only with the disputes between Butt Bros. and Vermejo Park Corporation (Vermejo). The district court entered summary judgment in favor of Vermejo and Butt Bros. have appealed. We affirm.

The pertinent facts are:

(1) W. S. Ranch Company was the fee owner of the lands in question. On about March 8, 1972, it leased these lands to Odessa Natural Corporation (Odessa), for purposes of exploration and drilling for oil and gas, operation of and production from oil and gas wells, and owning, treating, storing and selling oil and gas produced therefrom. The lessor reserved the right to occupy and use the lands for its ranching and other purposes, and reserved all other rights therein not inconsistent with the rights granted to lessee.

(2) Some time after March 8, 1972, W. S. Ranch Company conveyed the fee estate in the lands to Vermejo.

(3) On May 11, 1973, Odessa entered into a "Farmout Agreement" with American Fuels Corporation (American), whereby American was to explore and drill for oil and gas on the leased premises.

(4) On about February 18, 1974, American and Butt Bros. entered into a contract whereby Butt Bros. were to build roads, level land, haul water, provide gravel and load pipe for American in connection with its exploration and drilling. The work by Butt Bros. under this agreement was performed during the period from February 18, 1974 to September 28, 1974.

(5) In another case in the same district court in which the present case originated, Vermejo brought suit against American and Odessa. A judgment was entered on October 30, 1974, declaring and decreeing that the oil and gas lease of March 8, 1972 and the Farmout Agreement of May 11, 1973, referred to above in ¶¶ 1 and 3, were terminated at midnight on May 16, 1974, and awarding Vermejo possession of all the lands unencumbered by any claim of right, title or interest of any nature whatsoever by American and Odessa.

(6) The claim of liens upon which Butt Bros. brought the present suit to recover $6,233.70, plus costs and attorneys fees, was filed on November 26, 1974. The present suit, by which Butt Bros. sought to foreclose these claimed liens in order to recover the said amount, plus the costs and attorneys fees, was filed on December 20, 1974.

The first issue to be resolved is whether Butt Bros. acquired an enforceable lien against the fee owned by Vermejo under the Mechanics' Act and particularly under §§ 61–2–2 and 10 thereof, for the labor and materials furnished pursuant to their contract of February 18, 1974 with American as referred to above in ¶ 4. Butt Bros. claimed a lien under this act but Vermejo contended that the only lien they could possibly have acquired was one under the Oil Act. The district court resolved this in favor of Vermejo.

Butt Bros. base their claim that they can properly assert a lien under either or both the Mechanics' Act and the Oil Act upon the following provisions of § 65–5–15 of the Oil Act, which became effective February 28, 1931:

"This act [65–5–1 to 65–5–15] shall not in any way affect, modify or repeal chapter 82 of the '1929 New Mexico Statutes Annotated' [the Mechanics' Act, which is substantially the same as chapter 82 of the 1929 New Mexico Statutes Annotated]. All other laws in conflict with the provisions of this act are hereby repealed."

The argument of Butt Bros. is (1) that this expresses a clear legislative intent that the lien provisions of the Oil Act were not in any way to affect, modify or repeal the provisions of § 61–2–10 of the Mechanics' Act; (2) that every improvement mentioned in § 61–2–2 of the Mechanics' Act constructed upon any lands with the knowledge of the owner thereof shall be held to have been constructed at the instance of the owner; and (3) that the interest of the owner shall be subject to any lien filed pursuant to the provisions of the Mechanics' Act.

Vermejo counters with the argument that while the contentions of Butt Bros. are "theoretically appealing * * * such an academic analysis ignores the practicalities" of what was intended to be and what was in fact accomplished by the Oil Act. It argues that § 61–2–10 of the Mechanics' Act and § 65–5–1 of the Oil Act clearly conflict with each other, and a literal reading and application of the above-quoted language from § 65–5–15 of the Oil Act would necessarily have rendered much of the Oil Act surplusage and of no effect immediately upon its passage. We agree. If the Legislature had intended merely to broaden the scope of the attachable items for lien claimants in the oil and gas industry, it could easily have done so by amending the Mechanics' Act. Instead, it chose to enact a new and comprehensive act covering liens only in the oil and gas industry.

Under the Mechanics' Act, a lien may be imposed upon the fee owner's interest if he has knowledge of the construction and fails to disclaim responsibility therefor in the manner and within the time therein provided. Under the Oil Act, the fee owner's interest is subject to a lien only if he expressly so contracts. Obviously there is a conflict, if in fact both acts apply. A mere reading and comparison of the titles of the two acts clearly demonstrate that there are other areas of conflict, duplication and overlapping, if in fact conduct giving lien rights under the Oil Act were also intended to give lien rights under the Mechanics' Act.

The reasoning of the Supreme Court of Texas in *Ball v. Davis*, 118 Tex. 534, 18 S.W.2d 1063 (1929), when faced with a problem of construction very similar to the one presented here, is persuasive and appeals to us. In that case, the question was whether a right to a lien under the Oil Industry Lien Act of that state could also be asserted under other lien acts establishing rights to liens of materialmen, artisans, laborers and mechanics. Because a provision in the Texas statutes provided that the rights and remedies created in the Oil Industry Act should be cumulative as to rights and remedies under other lien laws, the Court of Civil Appeals held that those entitled to liens under the Oil Industry Lien Act could also look to other lien laws for their lien remedies.

In disagreeing with the holding of the Court of Civil Appeals, the Supreme Court of Texas stated:

"* * * [by the Oil Industry Lien Act] materialmen, artisans, laborers, and mechanics, for certain services, are authorized to fix liens against certain properties for specified services.

"The purposes of the declaration of cumulative effect was not to make other statutory provisions applicable to those covered by the Act itself, but to show that the things for which liens were given by the Act were not intended to nullify other lien statutes in favor of mechanics, laborers, clerks, and others performing services in the oil industry, and materialmen who might furnish material in the oil or mining industry not covered by a special Act [the Oil Industry Lien Act].

"* * *.

"To say that the existing laws then on the statute books, which are the very laws referred to by the Court of Civil Appeals as being applicable, in addition to the special Act [Oil Industry Lien Act] before us, did apply to the subject-

matter of [the Oil Industry Lien Act], would be in the face of the legislative declaration that there was no such law then on the statute books.[1] The fact is that at the time of the enactment of the special Act here involved * * * the oil industry had assumed large proportions in Texas.[2] It was then apparent that it might become, as it has since become, one of the major industries of the State; and it was doubtless the opinion of the Legislature that the interests of those in the business, whether as laborers, mechanics, materialmen, or operators and owners, made it necessary that their rights no longer be made to depend on general statutes of, to say the least, doubtful construction and indefinite application and meaning; and so, in its wisdom, because of the growing importance of the subject, and because of the number of people engaged in the industry, and the values involved, enacted the special law to regulate, govern, and control the special subjects named therein; but as to general subjects which might be in the oil industry, as in any other, such as the construction of buildings, liens for accountants, clerks, repair men, etc., leave the general laws * * * as they were, applicable then to subjects not covered by [the Oil Industry Lien Act], and still applicable thereto.

"The very purpose of special statutes is to make the law plain and easily ascertainable, and to hold that the special statutes as to the class of labor particularly named in [the Oil Industry Lien Act] are not exclusive, but that various other statutes of a general nature apply, adds confusion to the subject, and the law becomes a trap, calculated to involve all but the most astute in its toils. No such construction will be given it as to those named and the classes of labor set forth and the lien given in [the Oil Industry Lien Act]."

Id. at 541–42, 18 S.W.2d at 1065–66.

■ As above stated, we agree with the reasoning of the Texas court and hold that our Oil Act was the only act under which Butt Bros. were entitled to assert a lien. They make no claim that Vermejo, as owner of the fee, expressly contracted with them, or was the owner of a working interest in any well, which is required under our Oil Act before the lien created by the act extends to the underlying fee.

■ However, they claim that the lien they acquired upon the leasehold under the Oil Act was not extinguished by the terms of the leasehold, but, rather, that it contained a lien upon an interest in any oil and gas and followed that interest, even though the leasehold estate had terminated. That is, in some way, a lien attached to the

---

1. The Texas Legislature in enacting its Oil Industry Lien Act included an emergency clause in the legislation and recited as the reason therefor that there was no law protecting laborers and materialmen for labor performed for owners of lands, mines or quarries or owners of leaseholds for oil, gas pipelines or rights of way for mining or quarry purposes. The New Mexico Act, as hereinbefore stated, is known as the "Oil and Gas Lien Act" and relates only to liens "upon oil and gas wells and pipelines, upon the property, land, permits, easements, and leaseholds for oil and gas purposes, upon which same are located, and the appurtenances thereto, and upon the machinery, tools, materials, equipment, supplies, fixtures and appliances used or employed in the development, construction, maintenance, or operation thereof, and upon the materials, machinery, tools, equipment and supplies furnished therefor." Like the Legislature in Texas, our Legislature, in enacting our Oil Act, also included an emergency clause, reciting "that it is necessary for the preservation of the public peace, health and safety that this act take effect immediately upon its passage and approval * * *."

2. At the time of the enactment of our Special Act—Oil and Gas Lien Act—in 1931, the oil industry in New Mexico had assumed large proportions and was rapidly assuming ever-enlarging proportions.

mineral estate or mineral interests in any underlying oil and gas, survived the termination of the leasehold estate, which included or embraced this mineral estate or these mineral interests, and followed this mineral estate or these mineral interests back into Vermejo's fee simple estate. We are unable to follow or agree with this contention. A similar contention was urged upon and rejected by the Supreme Courts of Oklahoma and Texas. See *Hubbard v. Stotts*, 171 Okl. 205, 42 P.2d 489 (1935); *Bethlehem Supply Corp. v. Wotola Royalty Corp.*, 140 Tex. 9, 165 S.W.2d 443 (1942).

A leasehold estate, by its very nature, is something less than a fee simple estate, and one of the limitations, if not the most important and familiar one, is the fixed or ascertainable term of its duration. Thus, a leasehold estate, including all the rights, powers and privileges contained therein or appurtenant thereto, is subject to a time dimension, and upon the expiration of that dimension nothing is left. There was no merger of mineral rights with the fee upon the termination of the lease, because all the mineral rights were already contained in and were a part of the fee. The adoption of the position urged upon us by Butt Bros. would amount to a total disregard for and destruction of the provisions in our statute that "the lien herein created shall not extend to the underlying fee or royalty interest unless expressly provided by contract, nor shall it extend to the property, leasehold, or working interest of any owner who does not have a working interest in the well upon which the labor was performed or for which the materials were furnished or hauled." Section 65–5–1, supra.

The judgment of the district court should be affirmed.

IT IS SO ORDERED.

MONTOYA and SOSA, JJ., concur.