**In re LEWIS ENERGY CORPORATION, a Colorado corporation, Debtor.**

**LEWIS ENERGY CORPORATION, a Colorado corporation, Plaintiff,**

v.

**ACTION WELL SERVICE, INC., et al., Defendants.**

**Adv. No. 83 J 0174.**

United States Bankruptcy Court, D. Colorado.

Dec. 30, 1983.

Carol M. Clark, Law & Scheid, P.C., Denver, Colo., for W & C Contracting.

Lynne G. McGowan, Baker & Hostetler, Denver, Colo., for Lewis Energy.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

This matter comes before the Court on Plaintiff's Complaint to Disallow Claim under Section 502(d) or to Determine Validity, Priority and Extent of Lien. The Debtor/Plaintiff, Lewis Energy Corporation ("Lewis") and the Defendant, W & C Contracting Company, Inc. ("W & C") agreed to submit the matter on stipulated facts and exhibits with briefs and supporting affidavits in lieu of a trial and argument.

Lewis filed this action against W & C and numerous other defendants who claimed secured interests in certain properties in New Mexico in which Lewis holds leasehold interests. W & C's claim is based on nine Claims of Lien filed pursuant to the New Mexico Mechanics' and Materialmen's Lien Act and the New Mexico Oil and Gas Lien Act. The nine lien claims were filed by W & C against the various leaseholds on February 10, 1982, approximately eight days after Lewis' Chapter 11 petition was filed.

The lien claims are based on dirt contracting, bulldozing and road maintenance services performed by W & C and on materials furnished by W & C to the various leaseholds during a period beginning November 6, 1980, and ending approximately January 9, 1982. The nature of the work done and the charges for it are reflected in 65 invoices which have been submitted as evidence upon the stipulation of the parties. Lewis made no payments to W & C on any of these invoices. The total amount of the lien claims is $74,229.96, which includes $1,421.00 in attorney's fees and costs incurred in filing the liens.

Lewis does not dispute that it authorized the work or that it is indebted to W & C for the amounts shown on the invoices. It seeks to avoid the liens pursuant to 11 U.S.C. Sec. 545(2). Section 545(2) provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . .

\*     \*     \*     \*     \*     \*

(2) is not perfected or enforceable on the date of the filing of the petition against a *bona fide* purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists ...

In Sec. 1107(a) of the Code, a debtor-in-possession is given the same powers to avoid transfers that a trustee has, including those granted by Sec. 545(2). Lewis contends that the liens are voidable under Sec. 545(2) because they are not valid or enforceable against subsequent purchasers under New Mexico law. First, it argues that all of the liens are invalid because the labor furnished and materials supplied by W & C do not constitute the type of services contemplated as lienable under the applicable statutes. Second, Lewis claims that three of the liens are unenforceable because they were untimely filed. Finally, Lewis contends that the attorney's fees and costs are improperly included in the lien claims.

■ It is well settled that the validity, nature, and effect of liens in bankruptcy proceedings are governed by the law of the state in which the property is located. *In re Spectra Prism Industries, Inc.,* 28 B.R. 397 (Bkrtcy.App.Cal.1983); *In re Computer Room, Inc.,* 24 B.R. 732 (Bkrtcy.Ala.1983); *Porter v. Searle,* 228 F.2d 748 (10th Cir. 1955). It is likewise well established that where a lien is invalid under state law against subsequent purchasers, for whatever reason, it may be avoided by a trustee or debtor-in-possession. 11 U.S.C. Sec. 545(2); *In re Lekvold,* 18 B.R. 663 (Bkrtcy.N.M. 1982).

■ The applicable state law is contained in the New Mexico Oil and Gas Lien Act, Sec. 70–4–1 et seq. N.M.S.A. (1978). Though W & C's lien claims purport to be filed under both the New Mexico Mechanics' and Materialmen's Lien Act and the New Mexico Oil and Gas Lien Act, New Mexico law is quite clear that where work is done on land in connection with oil exploration and drilling, the Oil and Gas Lien Act is the only Act under which a claimant is entitled to assert a lien. *Butt v. Vermejo Park Corporation,* 89 N.M. 679, 556 P.2d 835 (1976).

Section 70–4–1, N.M.S.A. (1978) provides, in pertinent part:

> Every person who shall ... perform labor or furnish or haul material, equipment, tools, machinery or oil well or gas well supplies, used or employed, or to be used, or to be employed in the digging, drilling, torpedoing, completing, maintaining, equipping, operating or repairing any oil or gas well ... shall have a lien ...

■ The majority of the work done by W & C consisted of hauling dirt, lumber, construction equipment, materials and the like and building, blading and repairing roads. Lewis contends that this work is not lienable because it was not used for "drilling, torpedoing, completing, maintaining, equipping, operating or repairing" the oil wells in question. The Court believes that this is too narrow a construction of the lien statute.

The parties have cited cases for and against the proposition that grading and road work is lienable under general mechanics' lien statutes. *Compare Green v. Reese,* 261 P.2d 596 (Okl.1953), with *Pratt v. Duncan,* 36 Minn. 545, 32 N.W. 709 (1887). However, the cases cited are not particularly helpful as they deal with statutes concerning general construction work from different states and having different language from the Oil and Gas Lien Statute involved here. There are no New Mexico cases precisely on point. As a general proposition, the New Mexico Supreme Court has stated that mechanics' and materialmen's lien statutes are to be liberally construed but that courts should not apply the rule of liberal construction to create a lien where none exists or was intended by the legislature. *Lembke Construction Co. v. J.D. Coggins Company,* 72 N.M. 259, 382 P.2d 983 (1963). Presumably this general rule of construction would be applied by the New Mexico courts to the Oil and Gas Lien Act.

A fair reading of Sec. 70–4–1 leads to the conclusion that the legislature did intend for a lien to exist for the type of grading,

hauling, and road building work that W & C did. W & C certainly did haul materials, equipment, tools and machinery used in the digging, drilling and completing of the oil wells in question. In this respect they are within the literal terms of the statute. The grading and road building work can also be said to have been "used or employed" in the "completing" and/or "digging" of the oil wells, therefore the work done by W & C was properly lienable under Sec. 70–4–1.

The conclusion that a lien under the Oil and Gas Lien Act was intended to apply to such work is very strongly supported by the case of *Butt v. Vermejo Park Corp., supra.* Though the precise issue of the type of work done by the lien claimant in that case was apparently not put directly in issue, the New Mexico Supreme Court did allow a lien to be asserted under Sec. 70–4–1 for work which included building roads, levelling land, hauling water, providing gravel and loading pipe in connection with exploration and drilling for gas and oil. The work done by the claimant in *Butt* is nearly identical to the work done by W & C in the instant case.

■ Having found that the liens were validly asserted under Sec. 70–4–1, we next turn to the issue of whether they were timely filed. Section 70–4–4 provides the statute of limitations for filing lien claims under the Oil and Gas Lien Act. It states that:

Every original contractor, within one hundred twenty days after the performance of the last labor, or the furnishing, or hauling, of the last item of material, tools, machinery, equipment or supplies ... must file for record with the county clerk of the county in which the property upon which the lien is claimed, or some part thereof, is situated, a claim ...

The parties have stipulated that W & C was an original contractor as that term is defined in the Act. According to the stipulated facts and exhibits submitted in this matter, three of W & C's lien claims were filed more than 120 days after the last labor was performed or materials were furnished to the particular property. These claims

are number 01489 (Exhibit B), number 01490 (Exhibit C) and the lien filed at Book 22, Page 84, McKinley County (Exhibit J). They are for the amounts of $3,621.05, $9,442.99 and $2,228.87 respectively.

W & C has argued that, notwithstanding Sec. 70–4–4, these three claims were timely filed. It relies on the "continuous contract" provision of Sec. 70–4–2 which provides:

Any labor performed, or materials, machinery, tools, equipment or supplies so furnished or hauled by any person entitled to a lien under the provisions of the Oil and Gas Lien Act [70–4–1 to 70–4–15 NMSA 1978] for the land, oil and gas permit, leasehold, lease for oil and gas purposes, or oil pipeline, gas pipeline or gasoline pipeline, shall be considered as having been furnished under a single contract regardless of whether or not the same was performed or furnished at different times or on separate orders, provided no more than one hundred twenty days shall have elapsed between the date of performance of the labor or the date of the furnishing or hauling of any part or parts of the material, tools, equipment, machinery or supplies and the date on which labor or materials, tools, equipment, machinery or supplies are next performed, hauled or finished [furnished].

According to W & C, all work on all the oil leases should be considered as having been furnished under a single contract, pursuant to Sec. 70–4–2, because there were no lapses of more than 120 days between the various dates upon which services were performed. Since the last date upon which services were performed under the contract was January 9, 1982, and all the liens were filed within 120 days thereafter, on April 10, 1982, W & C contends that all the liens were timely filed.

The Court believes that W & C's argument is based on a misreading of the language in Sec. 70–4–2 and its intent. Again, there are no New Mexico cases construing or applying the continuous contract provision, and the cases from other jurisdictions cited by the parties are not particularly instructive. However, the plain language

of Sec. 70–4–2, especially when read in conjunction with Sec. 70–4–4, suggests that the continuous contract provision refers to work done on various dates by one claimant on a *single* parcel of property. The statute speaks in terms of work furnished to a particular parcel of land or a particular "permit, leasehold, lease ... or ... pipeline." It is to be noted that the description of the various types of property or property interests to which a lease may attach are in the singular, not the plural. Moreover, there is nothing in Sec. 70–4–2 which excuses compliance with the 120-day time limited of Sec. 70–4–4 once work is finally completed on each leasehold upon which a claimant works. Even if all the work done by W & C on the various leaseholds was pursuant to a single contract it had with Lewis, Sec. 70–4–4 would still require filing within 120 days after work was completed on each individual parcel of land upon which a lien was claimed. To read the statute as W & C suggests would be to undermine the policy of notice to third parties and to landowners upon which the requirement of filing is obviously based. A contractor could be in business for many years working on oil wells all over the state and, as long as no more than 120 days elapsed between the dates upon which services were rendered, the contractor would never have to file a lien claim until he ceased operating his business. This cannot have been the result intended by the New Mexico legislature when it enacted Sec. 70–4–2.

Other courts, in construing time limits for filing mechanics' lien claims where work is done on separate parcels of land pursuant to a single contract, have also reached the conclusion that the time limit begins to run on each parcel at the time work is completed on that parcel. *See, Phillips Construction Co., Inc.,* 434 F.Supp. 26 (N.D.Ill.1977); *Schmidt v. Anderson,* 253 Ill. 29, 97 N.E. 291 (Ill.1911). Thus, I find that lien claims 01489, 01490, and Book 22, Page 84, McKinley County are untimely filed and not enforceable against subsequent purchasers and, therefore may be voided by Lewis Energy pursuant to Sec. 545(2).

Finally, with respect to attorney's fees and costs claimed by W & C, I find that these are not lienable items under Sec. 70–4–1. Section 70–4–1 gives a qualified claimant a lien "for the amount due to him for the materials, tools, machinery, equipment, oil and gas well supplies, hauling or labor, and interest from the date the amount is due...". Attorney's fees and costs are not included in the amounts for which a lien can be claimed, and therefore I must disallow the liens to the extent they secure such expenses.

For all the foregoing reasons, it is ORDERED that W & C has a valid lien, pursuant to the New Mexico Oil and Gas Lien Act, in the total amount of $57,516.05.

FURTHER ORDERED that within 10 days of the date of this Order, any party may file a written request for the withdrawal of his exhibits received in evidence or in the possession of the Court. Upon conclusion of all appellate review pertinent hereto, or upon expiration of time to initiate such review, as the case may be, exhibits so requested shall be returned. Thereafter, the Clerk may destroy or otherwise dispose of any exhibits not requested and returned in accordance with this Order.