**In the Matter of Daniel B. CUFF, Debtor.**

**Bankruptcy No. MM11–84–01168.**

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 23, 1985.

**7.** Neither, for that matter, has Sumitomo demonstrated what the relevant "industry" is for

William W. Rentz, Bolgrien, Ruth & Rentz, S.C., Beloit, Wis., for Stateline Ford Tractor.

Leslie B. Griffith, Ross & Chatterton, Madison, Wis., for debtor.

### MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

Daniel Cuff ("Cuff") owned a Ford tractor ("the tractor") which he used in farming in Rock County, Wisconsin. On July 27, 1983, Cuff took the tractor to be repaired at Stateline Ford Tractor, Inc. ("Stateline") in Winnebago County, Illinois. The tractor was returned to Cuff on September 9, 1983. On October 18, 1983, Stateline filed a lien notice pursuant to ILL.REV.STAT. ch. 82 § 40 (1975), which provides:

Every person, firm or corporation who has expended labor, skill or materials upon any chattel ... shall have a lien upon such chattel beginning on the date of the commencement of such expenditure of labor, skill and materials ... for

purposes of this analysis.

the reasonable worth of such expenditure of labor, skill and materials ... for a period of one year from and after the completion of such expenditure of labor, skill or materials ... notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof.

ILL.REV.STAT. ch. 82 § 41 (1975) further provides:

Such lien shall cease at the expiration of sixty (60) days from the date of the delivery of such chattel to the owner thereof ... unless the lien claimant shall within sixty (60) days, file in the office of the recorder of deeds of the county in which said labor, skill and materials were expended on such chattel ... a lien notice....

On June 12, 1984, Cuff filed this chapter 11 case in bankruptcy. On July 9, 1984, Stateline filed notice of claim in the amount of $1,139.80 which it claimed was fully secured by the tractor. Cuff contends that this was the first notice he had of the mechanics' lien.

The Bank of Wisconsin asserts a lien on the tractor under a blanket equipment lien recorded with Rock County, Wisconsin on December 26, 1980. The bank's claim against Cuff is for $141,000.00, with interest accruing at $50.00 a day. Green-Rock Cooperative also asserts a lien against the tractor under a financing statement filed with Rock County on June 15, 1981, however, Green-Rock subsequently accepted an unsecured status. Cuff estimates the value of all his farm equipment (including the tractor at $19,000.00) to be $148,000.00, an amount which he believes would be its highest possible value.

Cuff has objected to the claim of Stateline as a secured claim and has moved to avoid Stateline's lien under 11 U.S.C. § 545. A hearing in this court was held on May 6, 1985.

11 U.S.C. § 545 provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

....

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

Cuff claims that Stateline's lien although good under Illinois law would not be effective against a good faith purchaser for value in Wisconsin. Wisconsin law requires that a mechanic's lien be perfected only by possession,[1] and that all other non-possessory interests in personal property of the type of the tractor be perfected under the U.C.C. Article 9, WIS.STAT. ch. 409. Stateline claims that the law of Illinois, where the lien arose, controls.

Courts resolving similar issues have applied conflict of laws analysis. There appear to be three major approaches. The first places emphasis on the situs of the encumbered property at the time of bankruptcy, the second emphasizes the situs of the property at the time when the lien came into existence, and the third suggests a broad ranging inquiry which leaves substantial discretion in the reviewing court.

*Collier on Bankruptcy* does not treat conflict of laws under section 545, but suggests in its analysis of 11 U.S.C. § 544(a) that the first approach is most common and "the tendency of the courts is to treat the law of the situs of property at the commencement of the case as governing to the extent that section 544(a) refers to non-bankruptcy law." 4 *Collier on Bankruptcy* ¶ 544.02 at 544–13 (15th ed. 1985) (footnotes omitted). *See e.g. In Re Spectra Prism Indus., Inc.,* 28 B.R. 397 (Bankr. App.Cal.1983) and *In Re Sea Catch, Inc.,* 36 B.R. 226, 230 (Bankr.D.Alaska 1983). In *In Re Lewis Energy Corp.,* 36 B.R. 205 (Bankr.D.Colo.1983), the debtor in possession brought action to avoid various lien claims against its leasehold interests in oil leases under section 545(2). The court ex-

---

**1.** WIS.STAT. §§ 779.41 *et seq. See Sensenbren-* ner v. Mathews, 48 Wis. 250, 3 N.W. 599 (1879).

plained, "[i]t is well settled that the validity, nature, and effect of liens in bankruptcy proceedings are governed by the law of the state in which the property is located." *Id.* at 207, citing cases construing section 544(a). However, the first approach as suggested by *Colliers* appears to have been applied primarily if not exclusively to real estate interests, the situs of which are generally fixed.

The second approach places emphasis on the situs of the property at the time the lien arose. This approach has been applied in cases which involve highly mobile personalty. In *Newark Slip Cont. Co. v. New York Creditmen's Adj. B., Inc.,* 186 F.2d 152 (2d Cir.1951), *cert. den.* 341 U.S. 931, 71 S.Ct. 805, 95 L.Ed. 1361 (1951), a creditor located in New Jersey made slips in New Jersey and delivered the finished slips to the bankrupt in New York. The court upheld the creditor's labor lien stating "[a]s the work was performed in New Jersey, the law of that state as to liens is controlling." 186 F.2d at 153.

In *In Re R.L. Newport and Co., Inc.,* 10 B.R. 436 (Bankr.S.D.N.Y.1981), a Wisconsin corporation filed a claim against a New York debtor which alleged that the debtor owed it money for services rendered in Wisconsin and which asserted a possessory lien on paper the debtor had earlier ordered. The court explained,

> As the contract to render the claim services was to be performed in Wisconsin, Wisconsin law must be applied to determine the parties' right in this dispute. It is a general and well-settled principle of law that contracts made at one place, to be performed at another, are governed by the law of the place of performance. Accordingly, Quad's rights, if any, to assert a lien upon the paper now in its possession turn upon an analysis of Wisconsin's law governing a bailee's common law or, as often referred to, artisan's lien.

10 B.R. at 437 (cites omitted).[2]

Under this approach Stateline would have the security of a valid mechanic's lien properly perfected under Illinois law. Thus, Stateline would be entitled to priority over other liens on the tractor.

The third approach which is formulated under the Restatement of Conflicts of Law appears to be more flexible, relying upon the court's discretion after various factors are considered. Am.Jur.2d explained:

> Under the Restatement Rule, as between the immediate parties, the validity and effect of a security interest in a chattel are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel, and the security interest under the choice-of-law principals, and, where the parties have not made an effective choice of law, greater weight will usually be given to the location of the chattel at the time the security interest attached.

16 Am.Jur.2d, *Conflict of Laws* § 50 at 84 (1979). This approach has been employed by several courts including the Ninth Circuit United States Court of Appeals. *In Re Holiday Airlines Corporation,* 620 F.2d 731, 6 B.C.D. 450 (9th Cir.1980). *See also In Re Barney Schogel, Inc.,* 12 B.R. 697, 700 (Bankr.S.D.N.Y.1981).

Applying this final approach to the problem in this case it is clear that no effective choice of Wisconsin law has been made by the parties. Furthermore, when the debtor took his tractor into Illinois to have it repaired he may be assumed to have known that with regard to the repair contract he

---

2. *See also Underwood v. Phillips Petr. Co.,* 155 F.2d 372, 374 (10th Cir.1946) ("The validity and effect of a lien on a chattel are determined by the law of the state where the chattel is at the time when the pledge or lien is created."); *Four Star Aviation, Inc. v. United States,* 409 F.2d 292, n. 6, P. 293 (5th Cir.1969) ("The validity of ... a chattel mortgage ... [in] the rights of a mortgagee thereunder are determined by the law of the place where the mortgage[d] property was located at the time the mortgage was executed...."); *Figuero v. Figuero,* 303 So.2d 801, 803 (La.App.1974) ("The general rule is that the validity and effect of a lien or privilege on a chattel are determined by the law of the state where the chattel was located at the time the lien was created."). 303 So.2d at 803 (cites omitted).

would be subject to the laws of Illinois. Nothing in these circumstances would seem to compel the application of Wisconsin law to the facts of the present case under the third approach.

Thus, whether the second or third approach is adopted, and either seems preferable in this case to the first, the law to be applied in determining the validity of the lien is that of Illinois. Thus, it is to Illinois law which we must look to determine the priority to be afforded the lien in favor of Stateline.

Upon the foregoing which constitute my findings of fact and conclusions of law in this matter, an order may be entered denying the debtor's objection to the secured claim of Stateline Ford Tractor, Inc.