**In the Matter of Barbara L. HORSTMANN, Debtor.**

**Edward H. Roberts, Plaintiff,**

**v.**

**Barbara L. Horstmann, Defendant,**

**Burton H. Fagan, In His Sole Capacity As Trustee, Defendant/Intervenor.**

Bankruptcy No. 99–03314–DJ.
Adversary No. 99–99230.

United States Bankruptcy Court, S.D. Iowa.

Sept. 26, 2000.

A. Fred Berger, Davenport, Iowa, for debtor.

Burton H. Fagan, Bettendorf, Iowa, Chapter 7 Trustee.

Mark W. Schwiebert, Moline, Illinois, for plaintiff.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Chapter 7 Trustee Burton H. Fagan ("Trustee"), as Defendant/Intervenor in this complaint to determine secured status brought by Creditor Edward H. Roberts ("Creditor"), asks the Court to grant summary judgment on his counterclaim that seeks to avoid Creditor's claim as a preferential transfer under 11 U.S.C. section 547(b). Contending his claim is based on a statutory lien that is excepted from avoidance by operation of 11 U.S.C. section 547(c)(6), Creditor resists the Trustee's motion.

Having conducted a telephonic hearing to consider the parties oral arguments and having reviewed the record on the motion and the written arguments, the Court now enters its decision.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the U.S. District court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(E), (F) and (K).

### BACKGROUND

On August 30, 1999 Debtor Barbara L. Horstmann ("Debtor") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. On the same date she filed her Schedules and Statement of Financial Affairs. According to the Summary of Schedules, Debtor had $62,500.00 in assets and $231,799.98 in liabilities on the date of filing. At paragraph 17 (other liquidated debts owing debtor) on Schedule B (Personal Property) and in paragraph 6 (assignments and receiverships) of the Statement of Financial Affairs, the Debtor indicated $60,000.00 from a divorce settlement was held by a Gary J. Rolfes and implied the full settlement amount was $120,000.00. On Schedule C (Property Claimed As Exempt), Debtor made no claim regarding the divorce settlement. On Schedule F (Creditors Holding Unsecured Nonpriority Claims), she reported owing Edward and Lucille Roberts $128,000.00. In paragraph 4 (suits, executions, garnishments and attachments) of the Statement of Financial Affairs, Debtor included the divorce action of *Horstmann v. Horstmann* (Equity # 23098) and the collection action of *Edward Roberts v. Barbara Horstmann* (Law # 94143). She represented the first matter was final as of October 20, 1997 and the second was a pending garnishment.

On November 19, 1999 Edward H. Roberts commenced this adversary proceeding against the Debtor to determine the secured status of his claim under 11 U.S.C. section 506. Creditor alleges his claim is based on a $128,297.69 judgment entered in the Circuit Court of the 14th Judicial Circuit in and for Rock Island County, Illinois on June 3, 1999 and registered in the Iowa District Court for Scott County on July 23, 1999. He states the Clerk of Court for Scott County issued execution of his judgment on a supersedeas bond being held in the dissolution action by the Clerk of Court of the Iowa District Court for Clinton County. He reports the execution occurred on or about August 13, 1999 and in conjunction with the Sheriff of Clinton County serving notice of garnishment and interrogatories on the latter Clerk.[1]

1. On August 18, 1999 the Clerk of Court of      the Iowa District Court for Clinton County

Creditor contends the execution created a statutory lien on the supersedeas bond pursuant to Iowa Code sections 626.22 and 626.33. Alleging he complied with all the relevant provisions of the Iowa garnishment law prior to the bankruptcy petition date, Creditor maintains the garnishment put any good faith purchaser on notice of the pendency of his claims as contemplated by 11 U.S.C. section 545. Accordingly, he asks the Court to reclassify his claim as a secured claim with priority over unsecured claims and any other claims secured by the property in issue.

The Debtor has not filed an answer or otherwise responded to the complaint. Though not a named party to the adversary proceeding, William H. Horstmann filed an answer on December 27, 1999 through his attorney Gary J. Rolfes. After reviewing the controversy at the time of the stipulated scheduling conference on February 16, 2000, the Court entered an order indicating no further action would be taken in the adversary proceeding while the Chapter 7 trustee administered the Chapter 7 case. The Court added she would review the status of both the Chapter 7 case and the adversary proceeding on or soon after May 17, 2000.

On March 13, 2000 the Trustee filed a notice of and motion for compromise or settlement of controversy in the Chapter 7 case. He explained the agreement as follows:

Debtor herein is entitled to the sum of $120,000 arising out of a dissolution decree from her ex-husband. 25% of said debt is payable at the end of this year. Prior to debtor filing her petition in bankruptcy, ex-husband paid to First Midwest Bank the sum of $17,820.84 on a debt owed by debtor, said debt being secured with ex-husband's life insurance policy. Ex-husband now agrees to pay over to this estate the entire sum of $120,000.00 without any further wait if Trustee gives him credit for the $17,820.84 previously paid by him to First Midwest Bank. This would leave $102,179.16 net payable to this bankruptcy estate which will be paid over instanter, thereby avoiding protracted litigation.

No objections were filed by the noticed bar date of April 3, 2000 and, as indicated in the motion, the compromise was deemed approved without further order of the Court.[2] Nevertheless, on April 20, 2000 the Trustee submitted a proposed order that referenced his motion, noted the lack of objection, found the compromise to be in the best interest of the estate and directed the Clinton County Clerk of Court to turn over the funds held in the approximate amount of $120,000.00 to the Trustee who, in turn, would pay $17,820.84 of such funds to William H. Horstmann. The Court entered that order on April 21, 2000.[3]

Meanwhile, on April 3, 2000, the Trustee filed a motion for leave to intervene in the Creditor's adversary proceeding. No interested party objected by the noticed bar date of April 17, 2000. Accordingly, the Court granted the motion and the Clerk's Office filed the Trustee's previously submitted answer and counterclaim.[4] In his answer, the Trustee contends the Creditor's execution and levy on the supersedeas bond did not constitute a statutory lien

---

answered the interrogatories. She reported being in possession of a check for $139,563.73 that was owed the Judgment Debtor.

2. By operation of Federal Rule of Bankruptcy Procedure 9006(f), an objection filed April 6, 2000 would have been timely. Accordingly, the effective date of the implied order was April 7, 2000.

3. Whereas the Trustee served his motion on parties in interest, the Clerk of Court limited service of the April 21, 2000 Order to the Debtor, the Debtor's attorney, the Trustee, the Trustee's attorney and the U.S. Trustee.

4. The Clerk's Office filed the Trustee's Answer and Counterclaim on April 25, 2000 and on May 2, 2000. The two filings appear to be identical and both bear original signatures. The first was served on March 1, 2000 and the second was served on March 27th, 2000.

as defined in 11 U.S.C. section 101(53). The Trustee alleges in his counterclaim that the supersedeas bond was property of the estate and that Creditor's execution, levy and garnishment—considered individually or collectively—amounted to a preferential transfer under section 547(b). On May 1, 2000 the Creditor filed his answer to the Trustee's counterclaim. In sum, he argues his claim was based on a statutory lien and therefore excepted from avoidance by operation of sections 545 and 547(c)(6).

On May 10, 2000 the Trustee filed this motion for summary judgment, affidavit, statement of undisputed material facts and memorandum of authorities in support of the motion. The Trustee asks the Court to enter a judgment that avoids the Creditor's judgment, execution, levy and garnishment, that directs the proceeds of the supersedeas bond be preserved for the benefit of the estate, and that directs the proceeds be turned over to the Trustee for administration. He also asks the Court to dismiss the Creditor's complaint and to assess costs against the Creditor.

On May 22, 2000 the Creditor filed his resistance. Once again the Creditor argues his claim is based on a statutory lien and therefore is excepted from avoidance and entitled to treatment as a secured claim under section 506. Though he challenges the Trustee's affidavit because it does not appear to contain matters within the Trustee's personal knowledge as required by Federal Rule of Civil Procedure 56(e), the Creditor acknowledges there does not appear to be any genuine issue with respect to the material facts. Nevertheless, he contends the application of the law to those facts prevents this Court from entering summary judgment as a matter of law. Accordingly, he asks the Court to deny the Trustee's motion for summary judgment on the counterclaim. In the al-

ternative, he asks the Court to grant the relief requested in his complaint.

On June 20, 2000 the Court conducted a telephonic hearing on the controversy. At the conclusion of the arguments,[5] the Court indicated she would invite the United States Trustee to file an amicus brief given that the parties were in agreement the specific pending issue appeared to be one of first impression and disposition could impact the administration of many other cases. The Court set July 11, 2000 as the filing deadline for such a brief and for any supplemental briefs from the Trustee and the Creditor. On June 21, 2000 the Court entered a written order to that effect.

The United States Trustee did not file an amicus brief. On July 11, 2000 the Trustee filed a supplemental memorandum. The Creditor submitted a letter brief dated July 10, 2000 and attached copies of two reported cases upon which he relied during oral argument.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings. Rule 56(a) permits a party like the Trustee to seek summary judgment upon a counterclaim. Rule 56(c) mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The parties are in agreement that there is no genuine issue as to any material fact. Hence, the summary judgment on the counterclaim is proper if the Trustee is entitled to judgment as a matter of law.

---

**5.** Among other questions, the Court asked the attorneys about the turnover of the proceeds in issue. Trustee's counsel indicated he had not been involved in the Trustee's motion to compromise or settle with Debtor's ex-hus-

band. Creditor's counsel had participated in some settlement discussion and otherwise appeared to be aware of the intent and extent of the Trustee's motion.

The Creditor, moreover, does not contend the Trustee has not established the prima facie elements of a preference under section 547(b).[6] The record before the Court on this summary judgment supports finding the Trustee has borne his burden of proof in that regard. That is, the execution by levy and garnishment constituted a transfer of an interest of the debtor in the supersedeas bond. The August 1999 transfer was undertaken to secure payment of the June 3, 1999 judgment that Debtor owed the Creditor. The transfer occurred within 90 days of the bankruptcy petition date and therefore Debtor is presumed to have been insolvent at the time of the transfer by operation of section 11 U.S.C. 547(f).[7] Lastly, the transfer enables the Creditor to receive more than he would as a general unsecured creditor in this case. Such a creditor will only share pro rata in proceeds remaining after payment of priority claims and after payment of any valid liens on the proceeds of the liquidated property of the estate.

The Creditor, however, invokes section 547(c)(6) that prevents a trustee from avoiding a preferential transfer if it "is the fixing of a statutory lien that is not avoidable under section 545 of this title." [8] Maintaining his claim is based on a "statutory lien" as that term is defined in section 101(53), Creditor contends the Trustee is not entitled to judgment as a matter of law. Section 101(53) provides:

> "[S]tatutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53).

Maintaining the Creditor's claim is based on a "judicial lien" as that term is defined in 11 U.S.C. section 101(36), the

---

6. 11 U.S.C. section 547(b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>   (A) on or within 90 days before the date of the filing of the petition; or
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>   (A) the case were a case under chapter 7 of this title;
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
> 11 U.S.C. § 547(b).

7. 11 U.S.C. section 547(f) provides:

> For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

8. 11 U.S.C. section 545 provides:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>   (1) first becomes effective against the debtor—
>     (A) when a case under this title concerning the debtor is commenced;
>     (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
>     (C) when a custodian is appointed or authorized to take or takes possession;
>     (D) when the debtor becomes insolvent;
>     (E) when the debtor's financial condition fails to meet a specified standard; or
>     (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;
>   (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;
>   (3) is for rent; or
>   (4) is a lien of distress for rent.
> 11 U.S.C. § 545.

Trustee contends section 547(c)(6) is inapplicable and judgment on the counterclaim is proper as a matter of law. Section 101(36) provides: "[J]udicial lien" means "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

The Trustee otherwise agrees with the Creditor that "the validity, nature and effect of liens in bankruptcy proceedings are governed by the law of the state in which the property is located." *In re Lewis Energy Corp.*, 36 B.R. 205, 207 (Bankr. D.Colo.1983). Likewise, he concurs that "[w]hether or not the lien in the instant case is statutory is purely a matter of state law." *In re APC Construction, Inc.* 132 B.R. 690, 693 (D.Vt.1991). Finally, there is no dispute that the proceeds of the supersedeas bond are located in Iowa, meaning this Court must apply Iowa law in determining whether the Creditor's claim is based on a statutory lien or a judicial lien.

The Creditor relies on section 626.33 (Lien—equitable proceeding—receiver) that provides:

> The plaintiff shall, from the time such property is so levied on, have a lien on the interest of the defendant therein, and may commence an action by equitable proceedings to ascertain the nature and extent of such interest and to enforce the lien; and, if deemed necessary or proper, the court may appoint a receiver under the circumstances provided in the chapter relating to receivers.

Iowa Code § 626.33.[9] Creditor reasons that his lien would not exist but for this statute and his having undertaken the levy and, therefore, his lien is one "arising solely by force of the statute on specified circumstances or conditions."

In support of his analysis, Creditor cites generally *Walters v. Walters*, 231 Iowa 1267, 3 N.W.2d 595 (1942). In that case, the Iowa Supreme Court declined to determine, as a matter of law, whether unpaid installments of alimony become a lien as they accrue if the underlying dissolution decree does not specifically provide that they will constitute a lien on the property of the party ordered to pay them. The appellate court explained: "Here, appellant because of the levy under the execution had a lien, independent of the judgment, from April 3, 1941, the time of such levy." *Id.* at 596. Creditor also cites *APC Construction*, 132 B.R. at 694 for the proposition that judicial proceedings necessary to enforce a statutory lien do not thereby convert such a lien into a judicial lien.

With respect to the *APC Construction* case, the Trustee correctly observes that the lien in issue in that case was a mechanic's lien—a classic statutory lien, unlike the lien under consideration in this case. With respect to the *Walters* case, the Trustee argues the Creditor's reliance is misplaced because the decision does not address what constitutes a statutory lien. He points out the sole issue before that court was whether the amounts awarded in the dissolution decree constituted a judgment or order upon which an execution could issue under sections 11567 and 11648 of the Iowa Code in effect at the time.[10] Concluding there is little connection between the *Walters* decision and the pend-

---

9. In his complaint, the Creditor also cited section 626.22 (Levy on judgment). That section provides:

> The levy upon a judgment shall be made by entering upon the judgment docket a memorandum of such fact, giving the names of the parties plaintiff and defendant, the court from which the execution issued, and the date and hour of such entry, which shall be signed by the officer serving the execution, and a return made on the execution of the officer's doings in the premises.

Iowa Code § 626.22.

10. Section 11567 provided in relevant part that "[e]very final adjudication of the rights of the parties in an action is a judgment," and section 11648 provided in relevant part that "[j]udgments or orders requiring the payment of money ... are to be enforced by execution." Today, Iowa Rule of Civil Procedure 219 defines "judgment" and Iowa Code section 626.1 discusses the enforcement of judgments.

ing controversy and focusing on the fact that Creditor's claim is based in part upon the service of the notice of garnishment and interrogatories, the Trustee recommends the Court turn her attention to *In re Yetter,* 112 B.R. 301 (Bankr.S.D.Iowa 1990).

The Court agrees that the *Yetter* decision generally supports the Trustee's position. Noting Iowa case law holds that garnishment is a species of attachment and that attachment creates a lien under Iowa law, the *Yetter* court held that garnishment under Iowa law creates a judicial lien. *Id.* at 303. Indeed, Iowa Code section 639.38 (Lien acquired—action to determine interest) specifically provides:

> The plaintiff shall, from the time such property is taken possession of by the officer, have a lien on the interest of the defendant therein, and may, either before or after the plaintiff obtains judgment in the action in which the attachment issued, commence action by equitable proceedings to ascertain the nature and extent of such interest and to enforce the lien.

Iowa Code § 639.38. That is, a lien created by this section is a "lien obtained by … other legal or equitable process or proceeding," meaning it is a "judicial lien" as that term is defined in section 101(36).

 As is evident from the above quoted language, a section 639.38 judicial lien may exist independent of any judgment.[11] Section 101(36) contemplates such a statutory scenario by setting forth the ways a judicial lien may be obtained in the alternative—by judgment, by levy, by sequestration, or by other legal or equitable process or proceeding. Thus, the portion of the *Walters* opinion, upon which the Creditor relies, is consistent with a finding that a lien created by section 626.33 is a "lien obtained by … levy," meaning that

it is a "judicial lien" as that term is defined in section 101(36).

## CONCLUSION

Wherefore, the Court finds the Creditor's claim is based on a judicial lien that the Trustee may avoid as a preferential transfer pursuant to 11 U.S.C. section 547(b).

A separate Order granting the Trustee's motion for summary judgment and a separate Judgment on the Trustee's counterclaim shall be entered accordingly.

---

11. In the context of an execution upon a judgment or order requiring the payment of money or delivery of possession of property, Iowa Code section 626.26 (Garnishment) provides that "[p]roperty of the defendant in the possession of another, or debts due the defendant, may be reached by garnishment."